**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                          No. 96-4377

JEFFREY LYNN SPRUILL,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Robert G. Doumar, Senior District Judge.
(CR-95-86)

Argued: April 10, 1997

Decided: July 1, 1997

Before WILKINS and MICHAEL, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Affirmed in part, vacated in part, and remanded by published
opinion.
Judge Michael wrote the opinion, in which Judge Wilkins and Senior
Judge Butzner joined.

_____

**COUNSEL**

**ARGUED:** David Wayne Bouchard, BOUCHARD & SMITH, Ches-
apeake, Virginia, for Appellant. Arenda L. Wright Allen, Assistant
United States Attorney, Norfolk, Virginia, for Appellee. **ON BRIEF:**
Helen F. Fahey, United States Attorney, Norfolk, Virginia, for
Appel-
lee.

_____

**OPINION**

MICHAEL, Circuit Judge:

During the early morning hours of April 22, 1995, defendant Jeffrey Lynn Spruill made over two hundred threatening phone calls to Federal Bureau of Investigation (FBI) and Bureau of Alcohol, Tobacco and Firearms (ATF) offices in Norfolk, Virginia. Spruill was convicted on three counts of making threatening phone calls in violation of 18 U.S.C. § 844(e). Section 844(e) is part of Chapter 40 of the federal criminal code, which regulates the "Importation, Manufacture, Distribution and Storage of Explosive Materials." Spruill argues that he can be convicted under § 844(e) only if the threats concerned the use of fire or explosives. We agree. Because counts two and three of his indictment did not charge this essential element of the offense, we vacate Spruill's convictions on those counts. We affirm his conviction on count one, rejecting his argument that there was insufficient evidence of a "true" threat. Accordingly, the case is remanded for resentencing and other housekeeping details.

I.

Jeffrey Spruill lived alone in a trailer in Chesapeake, Virginia, when the events in this case took place. As he often did, Spruill spent the evening of April 21, 1995, at home by himself watching television. The bombing of the Oklahoma City federal building, which occurred just three days before, dominated television news coverage that night. Spruill had two or three drinks of vodka as he watched TV. He listened as Attorney General Janet Reno appeared and talked about the Oklahoma City bombing. Spruill felt that Reno was responsible for deaths that occurred at two earlier incidents involving the federal government in Waco, Texas, and Ruby Ridge, Idaho. Spruill became enraged, believing that Reno was hypocritical for saying that those responsible for the Oklahoma City bombing would be held accountable. Spruill's wrath intensified as he watched "Crossfire" on CNN because a guest on that program was discussing how the FBI infiltrates white supremacy groups. Spruill later told the FBI that

he
is a white supremacist.

To vent his anger against the federal government, Spruill decided
to call the FBI and the ATF. At about 12:35 that same night,
Spruill

began calling the listed phone numbers for those agencies in Norfolk, Virginia. As Spruill explained at trial, "when I heard Mrs. [sic] Reno, you know, I just hit the roof. And I -- all my emotions just came out. And I just wanted to get it off my chest. I just wanted to get it off my chest. They will probably arrest me for harassment, but at least I got it off my chest." J.A. 144. From midnight through the rest of the night and morning of April 22, 1995, Spruill made over two hundred calls to the FBI and the ATF. Spruill kept drinking while he called; he switched from vodka to beer and drank a six-pack.

Susan Buckley, a security complaint assistant for the FBI, answered Spruill's first calls. Buckley said that during these calls Spruill ranted "about how Janet Reno was a murderer and was responsible for all of this, and just rambl[ed]." J.A. 47. Spruill became progressively more angry as he called again and again, never spending more than a minute or two on the line. Spruill's first round of calls to the FBI (all answered by Buckley) continued until 6:30 a.m.

During the same period (from about 1:00 a.m. to 7:00 a.m.) Spruill made several dozen calls to the ATF. The calls were taken by Tracey Waldron, who works for a telephone answering service. Waldron said that Spruill was short-tempered as early morning arrived. At about 6:30 a.m. Waldron

> picked the line back up and he [Spruill] had started talking
> to me again, and that's when he started telling me that --
> how would I like to be blown up and that, you know, he
> could blow the building up . . . . And that's when I patched
> him through to Michael Moore, the agent that was on call.

J.A. 58.

After the call was patched through to ATF Special Agent Michael Moore at his home, Moore talked to Spruill for about twenty minutes. Special Agent Moore recounted the thrust of Spruill's message:

> [A]s the conversation progressed, the caller[Spruill] told me
> that . . . this was just the beginning, that more buildings
> would be blown up, and maybe even the Federal Building

3

here in Norfolk, Virginia. And basically he just[kept] reiterating that the Oklahoma City bombing occurred because of the Waco, Texas fire . . . that was ordered by Janet Reno and carried out by the ATF and the FBI.

J.A. 66. When Spruill said, "this was just the beginning," Moore believed "that this was . . . a warning of things to come, meaning more buildings would be blown up or more people would be hurt." J.A. 67-68. Spruill indicated that the federal building in Norfolk would be an easy target "because it was so accessible to the general public, to just drive a car bomb right in and just leave it." J.A. 68.
Spruill ended the conversation by directing his venom at Special Agent Moore, saying "that he [Spruill] could tell [Moore] was a nice little black agent and that [he] would get[his] some day also." J.A. 72. As soon as Spruill hung up, Moore called the FBI and informed the agency of a possible bomb threat to the Norfolk federal building.
In response, authorities searched the building for a bomb, beginning around 7:30 a.m.

Meanwhile, Spruill had redirected his calls to the FBI. When FBI computer specialist Deborah Williams arrived at work around 7:30 a.m., she answered the phone and Spruill was on the line. Using a "very forceful[ ]" tone, Spruill

> started talking about the 17 deaths of the children in Waco,
> Texas, and how Janet Reno -- that Oklahoma was a pay-
> back for those deaths, and that Janet Reno was a murderer
> and those deaths were her responsibility. He further went on
> to say that he was a -- that he knew who I was and that he
> could find out where all the bureau people lived, the FBI
> people lived . . . that he knew where my boss Larry Tor-
> rence lived. And he told me that he [Spruill] was a white
> supremacist, and that the ATF and the FBI and the Federal
> Building should be -- should watch out for the cars.

J.A. 84-85. Spruill gave Deborah Williams his name and address. Yolanda Williams, another security complaint assistant for the FBI, came to work at 8:00 a.m. and immediately began to take calls from Spruill. He called about twenty-five more times between 8:00 a.m.

4

and 12:30 p.m. The FBI began recording Spruill's calls at around 10:00 a.m. because it believed he was making serious threats.

The tape recordings are replete with Spruill's references to the bombing of the Oklahoma City federal building. At one point Spruill discussed fertilizer and diesel fuel, the key ingredients used in Oklahoma City. He instructed Yolanda Williams to ask Larry Torrence, Special Agent in charge, whether using two tons or four tons of fertilizer would make a difference in the force of an explosion. Spruill repeatedly made comments (all recorded) such as"we're in every city," J.A. 249, "our time to strike is fast .. . approaching," J.A. 248, and "[w]e're gonna [ ] come after you," J.A. 252. A final example from the recordings underscores the looming nature of Spruill's threats:

> Burnt them up [in Waco]! Hey! Did you -- did you see what happened in Oklahoma City! I'm telling you it's com-ing. It's coming. It's coming and tell Larry [Torrence] what-ever he thinks is totally f---ing irrelevant, and he -- is he -- we have some of his agents on -- we have their names and addresses.

J.A. 250.

Later in the morning on April 22, 1995, Yolanda Williams turned the phone over to Special Agent Kevin Kenneally, who continued to answer Spruill's calls until he stopped making them around 12:30 p.m. Shortly thereafter, the FBI sent a SWAT team to Spruill's trailer where he was arrested.

Spruill was indicted on May 19, 1995. Count one of the indictment charged that Spruill, during his conversation with Special Agent Moore, threatened to bomb the federal building in Norfolk.**1** Count

_____

**1** Count one read as follows:

>   On or about April 22, 1995, at Norfolk, Virginia, in the East-
> ern District of Virginia, JEFFREY LYNN SPRUILL, the defen-
> dant, by means and use of an instrument of commerce, that is,
> a telephone, willfully threatened, during a conversation with

two charged Spruill with threatening Special Agent Larry Torrence, but it did not allege that the threat concerned the use of fire or explosives.**2** Counts three and four charged Spruill with threatening FBI agents and employees during his conversations with Yolanda Williams and Special Agent Kenneally, but those counts also failed to allege that Spruill threatened harm by means of fire or explosives. **3** Spruill

---

Special Agent Michael Moore of the Bureau of Alcohol, Tobacco and Firearms (ATF), to unlawfully damage or destroy a building, specifically, the Federal Building, in Norfolk, Virginia, by means of fire and explosives.

(All in violation of Title 18, United States Code, Section 844(e).)

J.A. 10.

**2** Count two read as follows:

On or about April 22, 1995, between approximately 7:30 and 7:45 a.m. in Norfolk, Virginia, in the Eastern District of Virginia, JEFFREY LYNN SPRUILL, the defendant, by means and use of an instrument of commerce, that is a telephone, willfully threaten [sic], during a conversation with Computer Specialist, Deborah L. Williams, of the Federal Bureau of Investigation (FBI), to kill, injure, or intimidate an individual, specifically identified as Larry Torrence, Special Agent in Charge of the Norfolk FBI Office, located in Norfolk, Virginia.

(All in violation of Title 18, United States Code, Section 844(e).)

J.A. 11.

**3** Count three read as follows:

On or about April 22, 1995, beginning at approximately 10:00 a.m., in Norfolk, Virginia, in the Eastern District of Virginia, JEFFREY LYNN SPRUILL, the defendant, by means and use of an instrument of commerce, that is, a telephone, willfully threatened, during a conversation that occurred with Security and Complaint Assistant, Yolanda E. Williams, of the Federal Bureau of Investigations, to attempt to kill, injure, or intimidate certain individuals, specifically: special agents and

employees of
the Norfolk Federal Bureau of Investigations (FBI) Office, Nor-
folk, Virginia.

waived his right to a jury and was tried by the district court. The court
found him guilty on counts one, two, and three but not guilty on count
four.

Before sentencing the district court directed that Spruill be evalu-
ated pursuant to 18 U.S.C. § 4244(a) so the court could decide
whether he suffered from a mental disease or defect that would affect
his sentence. After a hearing the court found that Spruill was suffering
from a mental defect and that instead of being sent to prison he should
be committed for treatment. The court therefore committed Spruill to
the custody of the Attorney General for five years with the direction
that he be hospitalized for care and treatment in a suitable facility. See
18 U.S.C. § 4244(d). Spruill appeals his conviction.

II.

Spruill first argues that 18 U.S.C. § 844(e) only applies to threats
concerning the use of fire or explosives. As a result, Spruill says his
convictions on counts two and three must be vacated because those
counts failed to charge an essential element, "by means of fire or an
explosive." Section 844(e) provides:

> Whoever, through the use of the mail, telephone, telegraph,
> or other instrument of commerce, willfully makes any
> threat, or maliciously conveys false information knowing
> the same to be false, concerning an attempt or alleged
> attempt being made, or to be made, to kill, injure, or intimi-
> date any individual or unlawfully to damage or destroy any
> building, vehicle, or other real or personal property <u>by
> means of fire or an explosive</u> shall be imprisoned for not
> more than five years or fined under this title, or both.

18 U.S.C. § 844(e) (emphasis added).

_____

(All in violation of Title 18, United States Code, Section
844(e).)

J.A. 12. Count four similarly charged Spruill for his telephone conversa-
tion with Special Agent Kenneally on April 22, 1995.

Spruill argues that § 844(e) describes a single offense with five elements: (1) willfully (2) making a threat or conveying false information about an attempt (3) by mail, telephone, telegraph, or other instrument of commerce (4) to kill, injure, or intimidate an individual or damage or destroy property (5) by means of fire or an explosive. Simply put, Spruill contends that the statute prohibits bomb threats.

The government argues that § 844(e) prohibits two distinct offenses, each with four elements. According to the government the first offense covers threats against individuals: (1) willfully (2) making a threat or conveying false information about an attempt (3) by mail, telephone, telegraph, or other instrument of commerce (4) to kill, injure, or intimidate an individual. The second offense covers bomb threats against property: (1) willfully (2) making a threat or conveying false information about an attempt (3) by mail, telephone, telegraph, or other instrument of commerce (4) to damage or destroy property by means of fire or an explosive. Thus, the government contends that § 844(e) prohibits (1) threats of any kind against individuals and (2) bomb threats against property.

Spruill filed a pretrial motion to dismiss counts two, three, and four of the indictment because they did not allege that the threats concerned the use of fire or explosives. The district court denied the motion, holding that the threatened use of fire or explosives was an element of the offense if the defendant threatened to damage or destroy property, but not if he threatened an individual. Fire and explosives, the court explained,

> are the most obvious ways in which property could be damaged. It's not necessarily going to be damaged in the same way that an individual would be injured, so it makes sense that the fire or explosive would apply to the building and that that would not be a necessary element of a threat to an individual.

J.A. 30. Spruill renewed the motion at trial before a different judge, and it was again denied.

Although § 844(e) has been on the books for more than twenty-five years, this is the first case to address whether the phrase "by means

of fire or an explosive" is an essential element of every offense under
that section. We conclude that it is.**4**

We begin with the language of the statute to see whether Congress
has spoken clearly. See Norfolk and W. Ry. Co. v. American Train
Disp. Ass'n, 499 U.S. 117, 128 (1991). As we will explain, the lan-
guage of § 844(e) is not entirely clear, but it tends to support
Spruill's
interpretation.

We repeat the nub of the parties' contentions. The government says
that § 844(e), properly read, has two distinct prongs. The "or"
between "intimidate any individual" and "unlawfully to damage or
destroy any building," the government argues, indicates that a
threat
against an individual is a separate and distinct offense. Thus, the
ele-
ment "by means of fire or an explosive," which follows the enumera-
tion of the property types covered by § 844(e), modifies only the
offense of making a threat against property. Spruill, on the other
hand,
argues that the "or" simply indicates that there are two types of
bomb
threats covered by the statute, threats against individuals and
threats
against property. The phrase "by means of fire or an explosive"
modi-
fies both types of threats.

Looking just at the four corners of the section, we think Spruill's
reading makes more sense. It seems unlikely that Congress would put
two distinct offenses--making a threat of any kind against an
individ-
ual and making a bomb threat against property--within the same sec-
tion of the criminal code. We do concede that Spruill's reading is
not
as clear as it could be: if there was a comma before"by means of
fire
or an explosive," the comma would clearly signal that the language

---

**4** We expect the issue is novel for a simple reason: up to now the
gov-
ernment appears to have used the section only to prosecute bomb
threats.
See, e.g., United States v. Tibbetts, 565 F.2d 867, 869 (4th Cir.
1977)
(telephone bomb threat); United States v. Leaverton, 835 F.2d 254,
257
(10th Cir. 1987) (fake letter bomb); United States v. Candelaria,
704
F.2d 1129, 1132 (9th Cir. 1983) (telephone bomb threat); United
States

v. Hicks, 495 F.2d 137, 137 (D.C. Cir. 1974) (referring to § 844(e) as
"Bomb Threats Act"; (telephone bomb threat); cf. United States v. Fears,
450 F. Supp. 249, 253 (E.D. Tenn. 1978) (concluding that bomb threat
to person's home would be a threat to an individual under § 844(e)).

9

following it made up a separate element that applies to the whole section. To reach the government's reading, however, we would have to take a much greater leap from the statutory language. The government's interpretation would be somewhat more persuasive if there was a comma before "or unlawfully to damage" to signal the start of a separate and distinct offense. For the government's reading to make real sense, however, "by means of fire or an explosive" should come between "damage or destroy" and "any building." The relevant language would thus read, "damage or destroy by means of fire or an explosive any building, vehicle, or other real or personal property." Congress instead tacked on the language "by means of fire or an explosive" at the end, where it can be read as applying to the whole section. In sum, after studying the language of § 844(e), we believe that Spruill's interpretation has more textual support, but we recognize that there is some degree of ambiguity.

We turn then to the legislative history, which confirms that "by means of fire or an explosive" is an essential element of the single offense addressed in § 844(e), that is, a bomb threat. Section 844(e) was enacted in 1970 as part of the Organized Crime Control Act of 1970. See Organized Crime Control Act of 1970, H.R. Rep. No. 91-1549, reprinted in 1970 U.S.C.C.A.N. 4007 [hereinafter House Report]. Title XI of the act (current §§ 841-848) was passed to "strengthen[ ] the Federal criminal law with respect to the illegal use, transportation or possession of explosives." House Report, 1970 U.S.C.C.A.N. at 4011. According to the House Report, section 844 "sets the penalties for violation of the regulatory provisions of this chapter and creates certain offenses pertaining to the unlawful use of explosives." House Report, 1970 U.S.C.C.A.N. at 4045. In explaining § 844(e) the House Report says plainly that the section was only intended to outlaw threats concerning explosives:

> Section 844(e) is a revision of present § 837(d) of title 18, United States Code. It is designed to deal more specifically with bomb threats and to increase the penalties applicable to such threats. The penalty is increased from a maximum of 1 year imprisonment or a fine of $1,000 or both to a maximum of 5 years imprisonment or a fine of $5,000 or both.
>
> Because of the increased penalty, and because of the particularly severe problems caused by bomb threats, § 844(e)

10

> is confined to information or threats concerning explosives. The section makes it an offense to threaten, or convey false information known to be false, about attempts to kill, injure, or intimidate any person, or unlawfully to damage or destroy any building or property.

Id. at 4045-46 (emphasis added).**5** The legislative history makes it clear that the phrase "by means of fire or an explosive" applies to the whole section, not just to threats to damage property.

The particular location of § 844(e) in the code supports our reading. Section 844(e) is found in Chapter 40 of the federal criminal code, which regulates the "Importation, Manufacture, Distribution and Storage of Explosive Materials." Section 842, for example, prohibits certain importation, manufacture, and sale of explosive materials. Section 844, entitled "Penalties," describes the penalties for violations under Chapter 40. The provisions immediately before § 844(e) (§§ 844(a), (b), (c), and (d)) and those immediately after (§§ 844(f), (g), (h), (i), and (j)) all deal with violations concerning explosives. Yet the government contends that § 844(e), in addition to describing another offense concerning explosives, describes a separate offense that does not concern explosives. The location of § 844(e) makes this argument easy to refute. We would not expect to find, in the midst of a chapter regulating explosives, a section that prohibits both bomb threats against property and threats of all kinds against individuals.

Based on the foregoing analysis, we hold that "by means of fire or an explosive" is an essential element of a § 844(e) offense.

The indictment here did not allege that Spruill's threats in counts two and three concerned the use of fire or explosives, although

---

**5** The legislative history does not mention threats concerning the use of fire because § 844(e) prohibited only threats "by means of an explosive" when it was enacted in 1970. See Organized Crime Control Act of 1970, Pub. L. No. 91-452, 84 Stat. 922, 957 (1970). The Anti-Arson Act of 1982 amended § 844(e) to prohibit arson threats as well, changing the section to read, "by means of fire or an explosive." Anti-Arson Act of 1982, Pub. L. No. 97-298, 96 Stat. 1319, 1319 (1982) (emphasis added).

§ 844(e) was cited. We now consider the consequences of this failure to charge an essential element of the § 844(e) crime. "`It is elementary that every ingredient of crime must be charged in the bill, a general reference to the provisions of the statute being insufficient.'" United States v. Hooker, 841 F.2d 1225, 1228 (4th Cir. 1988) (quoting Hale v. United States, 89 F.2d 578, 579 (4th Cir. 1937)). The government argues that even if the indictment is defective, "the evidence adduced at trial clearly established threats by means of explosives in each count." Brief for Appellee at 13. In other words, the government argues that the flaw in the indictment was harmless error. It is well established, however, that failure to recite an essential element of the offense in the indictment is not amenable to harmless error review. In Hooker, for example, a jury convicted the defendant on three counts of conspiracy, including conspiracy to commit a RICO offense. The count of the indictment charging the RICO conspiracy failed to allege that the activities affected interstate commerce, an essential element of a RICO offense. See Hooker, 841 F.2d at 1227. Sitting en banc in Hooker, we concluded that the Fifth Amendment's Grand Jury Clause precluded the government's harmless error argument, and we vacated the conviction on the RICO count even though the jury had been properly instructed on the element requiring an interstate commerce connection. "Neither instructions nor a petit jury verdict can satisfy after the fact the Fifth Amendment right to be tried upon charges found by a grand jury." Id. at 1232.

Hooker controls here. Only in count one did the grand jury indict Spruill for the offense proscribed by § 844(e): making a threat that concerns the use of fire or explosives. The failure to charge an essential element of the crime in counts two and three is not harmless error.**6**

---

**6** Moreover, unlike in Hooker, the trier of fact here did not make a finding on the element of the offense missing from the indictment. In this case the trial judge agreed with the motion judge's earlier ruling that the government did not have to prove that the threats charged in counts two, three, and four concerned the use of fire or explosives. Therefore,

although the judge found Spruill guilty of making threats, he did not find that the threats concerned fire or explosives. <u>See</u> J.A. 135-137; 174 ([Counsel for Spruill]: "Now, the other three counts, besides my old argument, they got to show that it was by bomb or--"; The Court: "I'm ruling against that. Move along on that.").

12

"This court, sitting en banc, has left no room for doubt as to the law
in this circuit concerning the requirements of a constitutionally ade-
quate indictment. Every essential element of an offense must be
charged in the body of an indictment, and the inclusion of a reference
to the statute will not cure the failure to do so." United States v.
Daniels, 973 F.2d 272, 274 (4th Cir. 1992) (citing Hooker). We there-
fore vacate Spruill's convictions on counts two and three of the
indictment.

III.

Spruill also appeals his conviction on count one of the indictment,
which charged him with making a threat to damage the Norfolk fed-
eral building "by means of fire and explosives" during his telephone
conversation with ATF Special Agent Moore. Spruill's argument is
that the evidence is insufficient to establish that his threat to blow up
the Norfolk federal building was a "true" threat. In reviewing the suf-
ficiency of the evidence on a criminal conviction, we must sustain the
verdict "if there is substantial evidence, taking the view most favor-
able to the Government, to support it." Glasser v. United States, 315
U.S. 60, 80 (1942). This case also requires us to bear in mind that the
trier of fact, and not the reviewing court, "`resolves any conflicts in
the evidence presented, and if the evidence supports different, reason-
able interpretations, the [trier of fact] decides which interpretation to
believe.'" United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996)
(quoting United States v. Murphy, 35 F.3d 143, 148 (4th Cir. 1994)).

As Spruill points out, § 844(e) proscribes only "true" threats. "The
prosecution must establish a `true threat,' which means a serious
threat as distinguished from words as mere political argument, idle
talk or jest." United States v. Leaverton, 835 F.2d 254, 256 (10th Cir.
1987) (quoting Black's Law Dictionary) (internal quotation marks
omitted). Context is important. See Leaverton, 835 F.2d at 256 ("In
determining whether words were uttered as a threat the context in

which they were spoken must be considered."). Spruill argues that his
"drunken ramblings," when considered in context, "were an expression of his political and philosophical beliefs[and] not a true threat."
Brief for Appellant at 11-12.

After reviewing the trial record, we conclude that there was substantial evidence to establish that Spruill's call to Special Agent

13

Moore (as charged in count one) was a true threat rather than political
rhetoric, idle talk, or jest. Moore received Spruill's call only because
Tracey Waldron, who was answering calls for the ATF, felt that the
threat was serious enough to justify patching the call through to
Moore, at home, at six-thirty in the morning. In the midst of his ram-
blings Spruill warned Moore that "maybe even" the federal building
in Norfolk would be blown up, "simply because it was so accessible
to the general public, to just drive a car bomb in and just leave it."
J.A. 68 (Moore testimony). Spruill kept repeating that Oklahoma City
was vengeance for Waco and that more buildings would be blown up.
Finally, Spruill made it hatefully personal, calling Moore a "nice little
black agent" who "would get [his] some day." J.A. 72. Faced with
these comments, Moore decided to play it safe and report the call as
a bomb threat. At the end of the bench trial the district court made a
factual determination that this call to Special Agent Moore was a true
threat. This finding is a reasonable interpretation of the events, and it
is supported by the substantial evidence we have just outlined. We
therefore affirm Spruill's conviction on count one of the
indictment.

IV.

We affirm Spruill's conviction on count one of the indictment
because his words were a true threat. We vacate his convictions on
counts two and three because those counts failed to charge an essen-
tial element of the § 844(e) offense, that the threat concerned the use
of fire or explosives. Because the conviction on count one remains in
place, we remand for resentencing on that count. On remand the dis-
trict court is also instructed to dismiss counts two and three of the
indictment without prejudice so that the government may reindict and
reprosecute Spruill on those counts if it chooses. See United States v.
Hooker, 841 F.2d 1225, 1233 (4th Cir. 1988); United States v. Hayes,
775 F.2d 1279, 1283 (4th Cir. 1985).

AFFIRMED IN PART, VACATED
IN PART, AND REMANDED