NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-3977
_____

DAVID KILKEARY,
Appellant

v.

UNITED STATES GOVERNMENT
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.N.J. No. 3-12-cv-02781)
District Judge:  Honorable Peter G. Sheridan
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
October 26, 2017
_____

Before:
GREENAWAY, JR., COWEN, *Circuit Judges*, and PADOVA,* *District Judge*.

(Opinion Filed: February 27, 2018)

_____

OPINION**
_____

_____

* The Honorable Judge John R. Padova, Senior United States District Court Judge for the Eastern District of Pennsylvania, sitting by designation.

** This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

GREENAWAY, JR., *Circuit Judge*.

This is an appeal from the District Court's denial of Appellant David Kilkeary's 28 U.S.C. § 2255 application seeking the issuance of a writ of habeas corpus. Kilkeary concocted an elaborate scheme to extort $3 million from the Showboat Hotel & Casino in Atlantic City, New Jersey, by taking hostages on a shuttle bus. Following a guilty plea to charges stemming from the botched scheme, he was sentenced to 300 months in prison with five years of supervision upon release. We affirmed the judgment of conviction on direct review. On habeas review, Kilkeary avers that defense counsel was ineffective for (1) failing to move for the District Judge's recusal, (2) failing to advise him as to the elements of 18 U.S.C. § 844(e), (3) permitting him to plead guilty to a kidnapping charge, and that (4) his Due Process rights were violated when the District Judge refused to recuse himself, sua sponte. We disagree. Accordingly, we shall affirm the District Court's denial of the writ of habeas corpus.

## I. Facts & Procedural Background

On May 18, 2009, a grand jury in the District of New Jersey returned a three-count indictment charging Kilkeary with: (1) willfully threatening to cause harm to persons and property by conveying false information that bombs he intended to detonate were genuine explosives, in violation of 18 U.S.C. § 844(e); (2) kidnapping through an instrumentality of interstate commerce, in violation of 18 U.S.C. § 1201(a); and (3) extortion, in violation of 18 U.S.C. § 1951(a).

2

On November 13, 2007, Kilkeary implemented a scheme to extort $3 million from the Showboat through the use of hostages. He planned to enter a shuttle bus and take hostages by threats with a fake gun and a fake suicide bomb. Kilkeary also planned to place additional fake bombs in the Showboat. Upon entering the shuttle bus, Kilkeary planned to compel the operator to drive the hostages to the entrance of the Showboat, where Kilkeary would exchange the hostages for money.

Kilkeary arrived at the Showboat at approximately 9:45 p.m. on November 13, 2007. Upon arrival, he placed a fake bomb in a second-floor bathroom adjacent to the Showboat's poker room, and proceeded to the shuttle bus area. Before entering the shuttle bus, the driver stopped Kilkeary and informed him that he could not board the shuttle bus with large bags. Kilkeary immediately produced a fake gun, pressed it against the driver's face, and said: "You are going to drive this bus—I got a bomb." The two then engaged in a physical confrontation, during which both Kilkeary and the driver fell off of the shuttle bus and onto the street. Kilkeary then stood up and entered the shuttle bus, while the driver, who had sprained his wrist, injured his ankle, and scrapped his knees as a result of the struggle, fled to safety.

Kilkeary then prevented the four passengers in the shuttle bus—now his hostages—from leaving the shuttle bus by pointing the fake gun at them and threatening to "blow everyone up" with the fake suicide bomb vest.[1] He then attempted to drive the

_____

[1] Kilkeary also threatened the hostages by telling them that the explosives were similar to C-4 on steroids.

bus, but was unable to because he did not know how to operate the air brake.

Approximately ten minutes later, after holding the fake gun to a female passenger's head, Kilkeary released her with instructions to inform Showboat security personnel that he had hostages on the shuttle bus.[2]

After learning of the hostage situation, Showboat security mobilized personnel to evacuate approximately two thousand guests and search for bombs. Police departments from surrounding counties were contacted and sent personnel to the Showboat. At the crime scene, Kilkeary told law enforcement that he had a gun and a bomb on the shuttle bus, and four bombs hidden in the Showboat. He threatened to detonate the explosives unless the Showboat produced $3 million. Also, he disclosed the location of the hoax bombs to convince law enforcement of the gravity of his threats. During the subsequent search of the hotel, law enforcement found the fake bombs.

Kilkeary then attempted to change to another shuttle bus with the hostages in tow. In an attempt to free the remaining hostages, a male passenger offered to move Kilkeary's bags to the second shuttle bus in exchange for their release. After the other hostages had been freed and the bags had been moved to the second shuttle bus, the male passenger ran out of the shuttle bus's side door to freedom. Alone, Kilkeary, once again, attempted to drive off in the shuttle bus. This attempt was aborted because of Kilkeary's

---

[2] Before releasing the female passenger, Kilkeary pointed the fake gun at her and stated, "I'm going to set the bomb off if you don't get the head of security here in two minutes."

4

inability to operate the shuttle bus.

While Kilkeary was trapped in the shuttle bus, law enforcement initiated negotiations by producing a cell phone to Kilkeary. During the standoff, Kilkeary continued to demand money and threaten to detonate bombs. After five-and-a-half hours, Kilkeary surrendered to law enforcement.

On August 19, 2009, Kilkeary pled guilty to all three counts in the indictment. At sentencing, the District Court determined that Kilkeary's total offense level was 35 and that his criminal history category was II. The District Court denied Kilkeary's downward departure motion seeking a reduced sentence based upon the evidence concerning his diminished mental health, and granted, in part, the Government's motion for upward variance. The District Court then sentenced Kilkeary to 300 months' imprisonment with five years of supervised release. Kilkeary filed a timely notice of appeal.

On direct appeal, this Court affirmed the District Court's judgment of conviction. Thereafter, Kilkeary filed a pro se petition seeking the issuance of a writ of habeas corpus, pursuant to 28 U.S.C. § 2255. The District Court denied the petition but granted a certificate of appealability as to all claims. The instant timely appeal followed.

## II.    Jurisdiction

The District Court had jurisdiction pursuant to 28 U.S.C. § 2255. We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253.

### III. Discussion

Kilkeary advances three ineffective assistance of counsel claims and a Due Process claim related to the District Court's refusal to recuse himself, sua sponte. We will consider each claim in turn.

### a. Ineffective Assistance of Counsel

Kilkeary raises three ineffective assistance of counsel claims. First, Kilkeary contends that defense counsel was ineffective for failing to move for the District Judge's recusal. Second, Kilkeary claims that counsel was ineffective because "he did not require the [G]overnment to meet its full burden of proof under 18 U.S.C. § 844(e)." Third, Kilkeary argues that counsel was ineffective in allowing him to plead guilty to the kidnapping charge when the evidence proffered did not support that conviction.

On appeal, we exercise plenary review over the legal components of ineffective assistance of counsel, "assess any underlying findings of fact for clear error, and 'exercise independent judgment on whether those facts, as found by the District Court, show that counsel rendered ineffective assistance.'" *United States v. Washington*, 869 F.3d 193, 204 (3d Cir. 2017) (quoting *United States v. Davenport*, 775 F.3d 605, 608 (3d Cir. 2015)).

The Sixth Amendment to the Constitution of the United States affords criminal defendants the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 684 (1984).

*Strickland* sets forth the two-part inquiry that must be satisfied to succeed on a claim of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687.

Indeed, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test." *Id.* at 693. To prove prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. We may consider the two *Strickland* prongs in either order and, as we have noted, it is often practical to consider prejudice first. *United States v. Fazio*, 795 F.3d 421, 426 (3d Cir. 2015).

### 1. District Judge's Recusal

Kilkeary contends that defense counsel was ineffective for failing to move for the District Judge's recusal. Here, Kilkeary's counsel was not ineffective. Moreover, "[t]here can be no Sixth Amendment deprivation of effective counsel based on an

7

attorney's failure to raise a meritless argument." *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999).

In this case, defense counsel's failure to move for the District Judge's recusal was not tantamount to ineffective assistance of counsel because the substantial amount of evidence that would have been proffered by the Government at a trial leads us to conclude that a conviction would have certainly been inevitable; thus, having no effect on the judgment of conviction, and thereby not prejudicing Kilkeary's defense. In addition, Kilkeary has failed to show that there is a reasonable probability that, but for defense counsel's failure to raise an objection, the result of the proceedings would have been different because he had previously admitted to the essential elements of the crimes to the Government. Therefore, because Kilkeary cannot establish that he was prejudiced by his counsel's inaction and had previously admitted to the crimes, this argument lacks merit and accordingly cannot be used to raise his Sixth Amendment deprivation of effective counsel claim. *See Strickland*, 466 U.S. at 694.

In short, defense counsel was not ineffective in failing to move for the District Judge's recusal.

### 2. 18 U.S.C. § 844(e)

Kilkeary argues next that counsel was ineffective because "he did not require the [G]overnment to meet its full burden of proof under 18 U.S.C. § 844(e)." In particular, Kilkerary takes issue with his guilty-plea colloquy, in which defense counsel agreed with the Government as to the elements necessary to satisfy a conviction under § 844(e).

The Federal statute proscribing making a false bomb threat, § 844(e), provides: (1) the defendant act willfully; (2) by mail, telephone, telegraph, or other instrument of interstate or foreign commerce; and (3) make a threat or maliciously convey false information, knowing the information to be false, concerning an attempt; (4) to kill, injure, or intimidate an individual or to damage or destroy a building, vehicle, or other real or personal property; (5) by means of fire or explosive.

The Government concedes that, at the plea colloquy, the prosecutor did not accurately recount the theories under which a conviction can be pursued pursuant to the statute. Specifically, the Government, relying on *United States v. Spruill*, 118 F.3d 221 (4th Cir. 1997), concedes *arguendo* that the prosecutor misstated the theories under which prosecution is proper pursuant to § 844(e) by being over-inclusive, when, in actuality, only one theory—bomb threats—may sustain a conviction under the statute.[3]

The colloquy is as follows:

> [Prosecutor]: Count 1 charges that in violation of Title 18, United States Code, Section 844(e), there are two theories to the statute. Either one of which is adequate to sustain a conviction.
> In the exchange, the government has evidence beyond a reasonable doubt regarding both theories. Of the two theories, they return as two elements. The first theory is that: One, the

---

[3] To date, the Third Circuit has not addressed the issue of which particular theories sustain a conviction pursuant to § 844(e). In *United States v. Spruill*, 118 F.3d 221, 225 (4th Cir. 1997), the Fourth Circuit rejected the government's contention that § 844(e) prohibited both threats of any kind against individuals and bomb threats against property. In so doing, the court held that the phrase "by means of fire or an explosive" prohibits bomb threats only. *Id.* at 226.

9

defendant knowingly and willfully; two, made a threat by means of fire or explosives.

The second theory is that: the defendant knowingly and maliciously conveyed false information. Those are the two theories, you Honor.

The Court: And so the crime, it has two elements and under the two theories two separate elements. Is that correct?

[Prosecutor]: Yes, your Honor.

The Court: [Defense counsel], do you agree those are the essential elements for Count 1?

[Defense Counsel]: I do.

Defendants' Sixth Amendment right to counsel extends to the plea-bargaining process. *Missouri v. Frye*, 566 U.S. 134, 140 (2012). During the plea-bargaining process, "counsel is required to give a defendant enough information 'to make a reasonably informed decision whether to accept a plea offer.'" *United States v. Bui*, 795 F.3d 363, 367 (3d Cir. 2015) (quoting *Shotts v. Wetzel*, 724 F.3d 364, 376 (3d Cir. 2013)). "[T]o obtain relief on this type of claim, a [defendant] must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010).

We conclude that Kilkeary's counsel was not ineffective after assenting to the aforementioned misstatement of the law. Kilkeary cannot demonstrate prejudice because he had previously admitted to the essential elements of the crime. *See Kilkeary v. United States*, No. 12-2781, 2015 WL 3798061, at *7 (D. N.J. June 18, 2015) (enumerating Kilkeary's admissions at guilty-plea colloquy).

In addition, the record establishes that the elements of the crime were satisfied because Kilkeary threatened to detonate a "bomb" on the Showboat shuttle bus, in

10

violation of § 844(e), if the Showboat did not produce $3 million. This willful and malicious declaration of false information threatened the hostages, police officers, and the entire Showboat property, employees, and visitors, by means of an explosive, which is well within the purview of the statute. *See* § 844(e).

Furthermore, Kilkeary has not proven how he was prejudiced by the plea. Kilkeary argues that "it is extremely likely that [he] would not have accepted such a . . . plea agreement" had he been aware of the proof requirements in his unique case. He contends that he would have "negotiated for a better deal" or "taken his chances at trial." Significantly, given Kilkeary's admissions during his plea colloquy, it would have been irrational for him not to accept the plea agreement at trial. *See Padilla*, 559 U.S. at 372; *see also Bui*, 795 F.3d at 366–67 ("[T]here can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument." (citations omitted)).

### 3. Guilty Plea to Kidnapping Charge

Finally, Kilkeary argues that counsel was ineffective in allowing him to plead guilty to the kidnapping charge because the evidence would not have supported his conviction at trial. Specifically, Kilkeary contends that the federal kidnapping statute requires that hostages be held in custody when a demand for ransom is made. Kilkeary posits that he did not have custody of the hostages at the time he was communicating with police officers, and he argues that that would have been a defense at trial.

11

The kidnapping statute at issue, § 1201(a) of Title 18 of the United States Code, states, in pertinent part:

> Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person . . . when—
> (1) the person is willfully transported in interstate or foreign commerce . . . .

Here, Kilkeary's charged act of kidnapping was completed at the inception, when he forcefully entered the shuttle bus, and held the passengers against their will while attempting to drive away. Further, he intended to use the hostages as bargaining chips in his scheme to extort $3 million from the Showboat. Moreover, no reasonable juror would have failed to find this violent commandeering of the shuttle bus, and confinement of the four passengers for extortion, as not holding for ransom or reward pursuant to § 1201(a).

Equally, the record demonstrates that Kilkeary affirmatively admitted to the necessary elements of kidnapping. At the plea colloquy, Kilkeary admitted to pointing his "gun" at the driver upon entering the shuttle bus. He further admitted to engaging in a physical struggle with the driver, whereupon the driver fled, leaving Kilkeary with the remaining four passengers in the shuttle bus. According to Kilkeary, he then took the four as his hostages by preventing them from leaving the shuttle bus and attempting to drive away. Kilkeary also admitted to releasing one of the hostages with instructions to inform law enforcement at the scene that he had taken control of the shuttle bus. Lastly, Kilkeary admitted that he had taken the hostages with the intent to extort $3 million from the Showboat.

12

We hold that counsel was not ineffective in allowing Kilkeary to plead guilty to kidnapping because Kilkeary has not shown that the outcome of this criminal proceeding would have been different if he had proceeded to trial.

### b. Due Process

Kilkeary avers that his Due Process rights were violated when the District Judge failed to recuse himself, sua sponte. Specifically, Kilkeary claims that recusal was necessary because the District Judge's impartiality could be questioned due to his "known past affiliation with the casino industry in New Jersey," including serving as vice president and general counsel of the Atlantic City Casino Association and representing "gaming-related [clients] including casinos and the Casino Association of New Jersey" as a shareholder at a law firm. Kilkeary posits that "these past relationships reasonably brought into question the court's objectivity in his criminal case."

Because trial counsel did not raise any objections to the District Judge's failure to recuse himself, we apply a plain error standard of review. *See Gov't of Virgin Islands v. Rosa*, 399 F.3d 283, 293 (3d Cir. 2005). Plain error is established when the appellant proves that: "(1) the court erred; (2) the error was 'plain' at the time of appellate consideration; and (3) the error affected [his or her] substantial rights." *Id.* (citing *United States v. Olano*, 507 U.S. 725, 734 (1993)). In short, for reversal to be warranted, "the error [must] seriously affect[] the fairness, integrity or public reputation of judicial proceedings." *Id.* (quoting *United States v. Gordon*, 290 F.3d 539, 543 (3d Cir. 2002)).

13

Two statutes govern the circumstances in which a judge should recuse him or herself: 28 U.S.C. § 144[4] and 28 U.S.C. § 455(a).

Section 455(a) provides, in pertinent part, that: "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The statute employs an objective standard—that is, "whether a reasonable person, with knowledge of all the facts, would conclude that the judge's impartiality might reasonably be questioned." *In re Kensington Int'l Ltd.*, 353 F.3d 211, 220 (3d Cir. 2003).

We conclude that the District Judge did not commit plain error in refusing to recuse himself. As such, Kilkeary's § 455(a) claim must fail. In this case, there is no support in the record that a reasonable person would conclude that the District Judge's impartiality might be reasonably questioned or that Kilkeary's Due Process right was therefore violated because neither the Showboat nor the Atlantic City Casino Association was a party to this case. In addition, the fact that the District Judge had previously represented the Atlantic City Casino Association and was a partner at a law firm that

---

[4] Section 144 provides that recusal is required "[w]henever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him [or her] or in favor of any adverse party." Here, § 144 is inapposite because Kilkeary did not file any affidavits supporting his belief that the District Judge should be recused. Moreover, Kilkeary is not arguing that the District Judge had a personal bias against him; he is merely contending that the judge's impartiality "could reasonably" be questioned because of his prior professional representation. Therefore, our analysis will center on § 455(a).

represented, among other clients, several casinos and the Casino Association of New Jersey, does not imply that the District Judge was impartial or biased in favor of the Showboat. Certainly, a reasonable person, with knowledge of all the facts, would similarly conclude that the District Judge was impartial in resolving the case at hand.

Thus, we perceive no plain error in the District Court's decision.[5]

## IV. Conclusion

For the foregoing reasons, we will affirm the District Court's denial of the writ of habeas corpus.

---

[5] In his papers, Kilkeary also contends that the District Judge has what may be "characterized as a 'higher than average' recusal record for a federal district judge" because of the number of recusal requests and orders in his matters. Kilkeary supports this contention by citing to several unpublished cases in the Third Circuit and making innuendoes regarding the judge's political affiliation. We need not address these arguments. They are not germane to our analysis.