UNITED STATES of America,
Plaintiff–Appellee,

v.

David Jude LEAVERTON,
Defendant–Appellant.

No. 86–2590.

United States Court of Appeals,
Tenth Circuit.

Dec. 11, 1987.

Robert S. Streepy, Asst. U.S. Atty., Kansas City, Kan. (Benjamin L. Burgess, Jr., U.S. Atty., with him on brief), for plaintiff-appellee.

David J. Phillips, Asst. Federal Public Defender (Charles D. Anderson, Federal Public Defender, with him on brief), Kansas City, Kan., for defendant-appellant.

Before MOORE, BALDOCK, and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

In the first count of a two-count indictment, David Jude Leaverton and David Eugene Nicholson were charged with willfully making, through the use of the mail, a threat to kill, injure, or intimidate by means of an explosive by sending a letter addressed to "Senator Bob Dole, U.S. Senate Chamber, Washington, D.C. 20204," said letter containing a "simulated improvised explosive device," in violation of 18 U.S.C. §§ 844(e) and 2. In the second count, both were charged with knowingly depositing for mailing a first class letter carrying inflammable materials, an item declared by statute to be nonmailable, with the intent to injure another, in violation of 18 U.S.C. §§ 1716 and 2. A jury convicted both defendants on count one as charged and convicted both defendants on a lesser included offense of mailing a nonmailable item, in violation of 18 U.S.C. § 1716. Leaverton was sentenced to five years imprisonment on count one, and one year imprisonment on count two, such sentences to be served consecutively, and not concurrently, to each other, and consecutively, and not concurrently, to any previously imposed sen-

tences then being served.[1] Leaverton, but not Nicholson, appeals. We affirm.

On appeal, counsel frames the issue to be resolved as follows: "Was the evidence adduced at trial insufficient to prove that appellant, through the use of the mail, communicated words which constituted a threat to kill, injure or intimidate by means of an explosive, and that such words were communicated as a true threat?" Such relates only to count one, and we find nothing in the brief that relates to Leaverton's conviction on count two.

■ On appeal from a guilty verdict in a criminal proceeding, where the sufficiency of the evidence is challenged, we must view all the evidence, direct and circumstantial, together with all reasonable inferences therefrom, in the light most favorable to the prosecution. *United States v. Welch,* 745 F.2d 614 (10th Cir.1984), *cert. denied,* 470 U.S. 1006, 105 S.Ct. 1364, 84 L.Ed.2d 384 (1985); *United States v. Twilligear,* 460 F.2d 79 (10th Cir.1972). We thus review briefly the government's case.

Leaverton and Nicholson were inmates in the State Penitentiary at Lansing, Kansas. Acting in concert, the two mailed an envelope containing a folded greeting card addressed to "Senator Bob Dole, U.S. Senate Chambers, Washington, D.C. 20204." The postal authorities were tipped to the mailing of this envelope, and intercepted it in Washington, D.C. before delivery to Senator Dole's offices.

■ On the face of the greeting card, Leaverton had written the following: "I'm tired of all the mental games you people play with me so here is something in return by a real freedom fighter. David Jude Leave." (The card on which the statement was written was torn at this point.) Leaverton's co-defendant, Nicholson, had written the following on the greeting card: "This could have blown your [expletive deleted] head off! Think about it. D.E.N."

Fingerprints of both defendants were found on both the envelope and card.

Enclosed in the folded greeting card was a "device" consisting of two different kinds of springs, both insulated and uninsulated wiring, a small hearing-aid-type battery, a copper coil, a crystal oscillator, a black plastic electronic component, which appeared to be a capacitor, and a piece of metal tubing crimped at both ends. All of these items had been connected by the wiring. When the tubing was opened, match heads were found inside. The individual who disassembled the device testified that at first he thought the envelope might contain a functioning device, because a wire leading into the crimped piece of tubing was connected to the device which appeared to be a capacitor. He explained that the crimped tubing pointed toward the mechanism being an explosive device since pressure would have built up inside the closed chamber if material inside the device had ignited and the resulting gases could not escape. However, according to this witness, he later realized that the device was non-functioning when he removed and opened the small piece of tubing and determined that its contents were not sufficiently explosive to present a real danger.

A postal inspector, who interviewed Leaverton in the State Penitentiary, testified that, after advising Leaverton of his rights, he asked Leaverton if he knew anything about a letter bomb being mailed to Senator Dole. According to this inspector, Leaverton initially denied knowledge of any such mailing, but later on, in the same interrogation, admitted sending it. Leaverton reportedly stated that he was angered by Senator Dole's statements concerning capital punishment. Leaverton also stated to the inspector that he had prior experience in making these devices when associated with "certain paramilitary groups" and that he "intended for it to explode."[2]

18 U.S.C. § 844(e) reads as follows:

**1.** On the date of the alleged offenses here involved, both defendants were inmates in the State Penitentiary in Lansing, Kansas.

**2.** Leaverton testified in his own behalf, and his testimony at trial was that the real reason he

mailed the envelope and card to Senator Dole was to complain about conditions at the State Penitentiary and that he didn't intend to hurt anyone. However, there was no writing on the

(e) Whoever, through the use of the mail, telephone, telegraph, or other instrument of commerce, willfully makes any threat, or maliciously conveys false information knowing the same to be false, concerning an attempt or alleged attempt being made, or to be made, to kill, injure, or intimidate any individual or unlawfully to damage or destroy any building, vehicle, or other real or personal property by means of an explosive shall be imprisoned for not more than five years or fined not more than $5,000, or both.

The district court's instructions to the jury in the instant case setting forth the essential elements of count one, which was based on 18 U.S.C. § 844(e), tracked the statutory language. Counsel makes no challenge to the instruction. Rather, the thrust of his argument on appeal is that even viewing the evidence in a light most favorable to the government, the evidence is legally insufficient to show that Leaverton made a "threat to kill, injure or intimidate" Senator Dole, or at least any "true" threat to do so.[3]

We find no case in this circuit considering 18 U.S.C. § 844(e). In fact the only circuit court opinion considering 18 U.S.C. § 844(e) drawn to our attention by counsel is *United States v. Nusz*, 462 F.2d 617 (9th Cir.1972). However, the charge in that case was not based on the particular part of § 844(e) which is involved in the present case.[4] In such circumstances, cases considering 18 U.S.C. § 871, threats against the President, and 18 U.S.C. § 876, mailing threatening communications, have bearing on the present controversy as to just what constitutes a "threat."

*Black's Law Dictionary* 1327 (5th ed. 1979) defines the word "threat" as follows:

A declaration of intention or determination to inflict punishment, loss or pain on another, or to injure another by the commission of some unlawful act.... A menace; especially, any menace of such a nature and extent as to unsettle the mind of the person on whom it operates, and to take away from his acts that free and voluntary action which alone constitutes consent. A declaration of one's purpose or intention to work injury to the person, property, or rights of another, with a view of restraining such person's freedom of action.

The term "threat" means an avowed present determination or intent to injure presently or in the future. A statement may constitute a threat even though it is subject to a possible contingency in the maker's control. The prosecution must establish a "true threat," which means a serious threat as distinguished from words as mere political argument, idle talk or jest. In determining whether words were uttered as a threat the context in which they were spoken must be considered.

In *Watts v. United States*, 394 U.S. 705, 708, 89 S.Ct. 1399, 1401, 22 L.Ed.2d 664 (1969), the Supreme Court stated that 18 U.S.C. § 871(a) "initially requires the Government to prove a true 'threat,'" and the court held in *Watts* that the "political hyperbole" indulged in by the defendant in that case did not equate to a "true threat." However, in the instant case, the statements of the appellant and his accomplice under no stretch of imagination could be considered as mere "political hyperbole,"

card which referred to conditions at the penitentiary, or capital punishment for that matter.

**3.** Leaverton moved for judgment of acquittal under Fed.R.Crim.P. 29 at the conclusion of the government's case and at the conclusion of all the evidence. Both motions were denied. He also moved, after verdict, for judgment notwithstanding the verdict, which was also denied.

**4.** The defendant in *Nusz* was charged with making threats over the telephone to dynamite a building. The Ninth Circuit upheld the district

court's denial of an instruction that "before a statement may be considered a threat, even though made vehemently, caustically or unpleasantly, it must be made without condition," with the comment that although conditional language may sometimes negative a threat, it does not necessarily follow that conditional language always negatives a threat. In that same case, the Ninth Circuit also rejected the argument that a threat can be the basis for a conviction "only if made with a present intention to damage or destroy property by means of an explosive."

whatever else such statements may or may not be.

In *United States v. Dysart*, 705 F.2d 1247, 1256 (10th Cir.), *cert. denied*, 464 U.S. 934, 104 S.Ct. 339, 78 L.Ed.2d 307 (1983), we stated that a conviction under 18 U.S.C. § 871 does not require proof that the defendant actually intended to carry out the threat and we also approved the following instruction:[5]

In a prosecution for threats against the President, it is not necessary to show that the defendant intended to carry out the threat, nor is it necessary to prove that the defendant actually had the apparent ability to carry out the threat.

The question is whether those who hear or read the threat reasonably consider that an actual threat has been made. It is the making of the threat, not the intention to carry it out, that violates the law.

\* \* \* \* \* \*

The term "threat" means an avowed present determination or intent to injure presently or in the future. A statement may constitute a threat even though it is subject to a possible contingency in the maker's control. The prosecution must establish a "true threat" which means a serious threat as distinguished from words as mere political argument, talk or jest.

In determining whether words were uttered as a threat, the context in which they were spoken must be considered.

In *United States v. Crews*, 781 F.2d 826, 832 (10th Cir.1986), we stated that the question of whether a defendant's statement is a "true threat" or a "political speech" is generally a jury question, and the mere fact that a particular statement may have "political overtones" does not mean that it cannot, at the same time, constitute a "true threat." In *Crews* we also held, at pages 834, 835, that the district court did not err in instructing the jury that the defendant could be convicted of the crime charged even "absent proof of an intention to carry out the threat."[6]

Under the authorities above cited, do the written statements of Leaverton, coupled with the statements of his co-defendant Nicholson, for which Leaverton was legally responsible, when viewed in their factual context constitute a "true threat"? We think so. Statements that "[t]his could have blown your [expletive deleted] head off" and "[s]o here is something in return," when viewed in the fact setting in which they were made, i.e., a "device" enclosed in the card, are in our view sufficient to permit the jury to find, in effect, that "true threats" were made. The fact that the device malfunctioned, or was, for whatever reason, non-functional from the start, is not a defense. In *United States v. Lincoln*, 589 F.2d 379, 381 (8th Cir.1979), the Eighth Circuit held that in a prosecution brought under 18 U.S.C. § 876 "[t]he government does not have to establish that the defendant in a particular case had the actual capability to successfully accomplish the threatened action." We hold the government need not establish actual capability in prosecuting a violation of 18 U.S.C. § 844(e).

Judgment affirmed.

---

5. Instructions given in the instant case parallel the instruction approved in *Dysart*.

6. Judge Logan dissented in *Crews* on this particular matter. However, Judge Logan recognized that "[w]hen a threat is made *directly* to the President, or in such a manner that it is reasonable to expect that it would reach the President or the President's security personnel, we have held that it is unnecessary for the government to prove the defendant actually intended to carry out the threat" (emphasis Judge Logan's). *Id.* at 836. In *Crews*, however, the threat was not made directly to the President, nor in such manner as would reach him or his security personnel. In the instant case, the threat was made in a manner intended to reach Senator Dole or his security personnel.