F I L E D
United States Court of Appeals
Tenth Circuit

FEB 16 1999

PATRICK FISHER
Clerk

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JAMES DODSON VIEFHAUS, JR.,
also known as Thorsson,

Defendant-Appellant.

No. 97-5207

---

**Appeal from United States District Court
for the Northern District of Oklahoma
(D.C. No. 97-CR-5-BU)**

---

Stephen J. Greubel, of Ungerman & Iola, Tulsa, Oklahoma, for the appellant.

John Russell, Assistant United States Attorney, (Stephen C. Lewis, United States
Attorney, and Neal B. Kirkpatrick, Assistant United States Attorney, on the brief),
Tulsa, Oklahoma, for the appellee.

---

Before **ANDERSON**, **KELLY**, and **BRISCOE**, Circuit Judges.

---

**BRISCOE**, Circuit Judge.

---

Defendant James Dodson Viefhaus, Jr., appeals his convictions for conspiracy to use and use of a telephone to transmit a bomb threat. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

I.

Viefhaus and his fiancee, Carol Howe, formed a white supremacy organization in Tulsa, Oklahoma, known as the National Socialist Alliance of Oklahoma, of which they were the only members. The organization promoted white racial superiority and advocated destruction of, *inter alia*, blacks, Jews, homosexuals, and federal law enforcement officials. One of the primary methods used to disseminate its messages was a telephone "hotline" under the listing "Aryan Intelligence Network." The hotline was an answering machine on which Viefhaus recorded commentary reflecting the organization's viewpoints.

On December 8, 1996, Viefhaus recorded a lengthy message that formed the basis for his subsequent criminal prosecution. The message stated in part:

> It is time for all white people to realize that the current system of government is beyond repair. Our revolution is not about fixing this system, but to absolutely destroy it, by any means necessary. Only then can we build an Aryan society for our children and grandchildren. The first major step in solidifying the revolutionary mentality is to understand that there are only two classes in life, those who support our cause and the enemy. As in the case of the bombing of the Murrah Federal Building, the revolutionary understands and accepts no matter how painful that innocent people must be considered expendable if necessary, in order to successfully complete any action. . . . This is a war . . . racial . . . holy war. *As an added ultimatum to those of you who are still unwilling to pick up*

*a sword, a letter from a high ranking revolutionary commander has been written and received demanding that action be taken against the government by all white warriors by December 15th and if this action is not taken, bombs will be activated in 15 pre-selected major U.S. cities. That means December 15, 1996, one week from today. In [other] words, this war is going to start with or without you*      . For all of you out there that have been bragging about being ready and willing to jump in when the time comes, well you better lace up your jump boots.

Appellant's Br. at 5 (emphasis added). Journalist William Morlin telephoned the hotline. Morlin's reporting had been dedicated to coverage of white supremacy groups and the militia movement for the previous eighteen years. He believed the recorded comments were "particularly ominous," most notably the threat of the imminent bombing of fifteen cities. Morlin contacted Special Agent Kenneth Pernick, chief of the FBI Domestic Terrorism Unit. Agent Pernick called the hotline and then asked colleagues to call the hotline. After listening to the message, the agents decided to contact the local FBI office in Oklahoma City.

FBI agents executed a search warrant at Viefhaus' house in Tulsa, Oklahoma, on December 13, 1996. Agents seized literature espousing hate and violence, Nazi propaganda, a cache of weapons, books on making bombs, chemicals and other materials that could easily be converted into high-powered pipe bombs, and a list of facilities in the Tulsa area occupied by Jewish, Muslim, and Native American groups, as well as various federal agencies.

Viefhaus was indicted on one count of using a telephone to transmit a bomb

threat, in violation of 18 U.S.C. § 844(e), [1] and one count of possession of an unregistered explosive device, in violation of 26 U.S.C. § 5861(d). A superseding indictment charged Viefhaus and his fiancee with the original two counts as well as one count of conspiracy, in violation of 18 U.S.C. § 371. Viefhaus filed a pretrial motion to dismiss the original two counts, claiming the hotline message did not represent a "true threat," and the message was protected speech. The motion was denied.

At trial, over Viefhaus' objection, the court permitted the government to introduce into evidence the items seized at Viefhaus' home pursuant to the search warrant. Viefhaus moved for judgment of acquittal under Fed. R. Crim. P. 29(a) after the government completed its case and again at the close of all evidence, and the motions were denied. A jury found Viefhaus guilty of the three counts and he was sentenced to thirty-eight months' imprisonment. Viefhaus does not appeal his conviction for possession of an unregistered firearm or that portion of the conspiracy conviction relating to that charge.

---

[1] 18 U.S.C. § 844(e) provides:

Whoever, through the use of the mail, telephone, telegraph, or other instrument of interstate or foreign commerce, or in or affecting interstate or foreign commerce, willfully makes any threat, or maliciously conveys false information knowing the same to be false, concerning an attempt or alleged attempt being made, or to be made, to kill, injure, or intimidate any individual or unlawfully to damage or destroy any building, vehicle, or other real or personal property by means of fire or an explosive shall be imprisoned for not more than 10 years or fined under this title, or both.

II.

On appeal, Viefhaus contends (1) the message on the answering machine represented constitutionally protected speech; (2) the district court erred in submitting this ostensibly pure legal issue to the jury; and (3) the court improperly admitted evidence of previous statements by Viefhaus disparaging minorities and law enforcement officials, as well as inflammatory materials seized from his house.

**First Amendment issues**

Viefhaus argues his comments amounted only to "vulgar political speech" within the context of a "political agenda." Appellant's Br. at 22. He relies primarily on Watts v. United States, 394 U.S. 705 (1969) (per curiam). In Watts, an eighteen-year-old Vietnam draftee, in discussing police brutality at a public rally, remarked, "If they ever make me carry a rifle the first man I want to get in my sights is L.B.J." Id. at 708. Watts was convicted of making a threat against the President, in violation of 18 U.S.C. § 871(a) (a statute employing language very similar in all relevant respects to that in § 844(e)). The Supreme Court reversed the conviction, holding the government must prove the defendant made a "true threat" to establish a violation of the statute. "Political hyperbole" will not suffice. Id.

A "true threat" means "a serious threat as distinguished from words as mere political argument, idle talk or jest." United States v. Leaverton, 835 F.2d 254, 257 (10th Cir. 1987). We have previously defined "threat" by referencing the language of Black's Law Dictionary. See id. at 256-57. We again rely on that definition, but elaborate on the meaning of "intent" as it is used in that definition. Thus, we define "threat" as a declaration of intention, purpose, design, goal, or determination to inflict punishment, loss, or pain on another, or to injure another or his property by the commission of some unlawful act. See Black's Law Dictionary 1480 (6th ed. 1990); Webster's Third New Int'l Dictionary (unabridged) 1176 (1993). It is not necessary to show that defendant intended to carry out the threat, nor is it necessary to prove he had the apparent ability to carry out the threat. *The question is whether those who hear or read the threat reasonably consider that an actual threat has been made*. It is the making of the threat and not the intention to carry out the threat that violates the law. Leaverton, 835 F.2d at 257.

Although the bulk of the recorded message at issue is comprised of crude political rhetoric, Viefhaus crossed the threshold from political rhetoric to criminal threat when he stated unequivocally that fifteen cities would be bombed. The fact that a specific threat accompanies pure political speech does not shield a defendant from culpability. United States v. Crews, 781 F.2d 826, 832 (10th Cir.

-6-

1986) (per curiam); United States v. Welch, 745 F.2d 614, 618 n.3 (10th Cir. 1984).

Viefhaus further suggests his actions are beyond the purview of § 844(e) because (1) he did not directly communicate with anyone; (2) the warning in the message was conditional in that no bombing would commence if action was "taken against the government by all white warriors"; and (3) the message merely related a threat leveled by a third party. As the district court correctly held, § 844(e) does not mandate that a defendant initiate the call. In addition, we have held that a "statement may constitute a threat even though it is subject to a possible contingency in the maker's control." Leaverton, 835 F.2d at 256.

While we have found no cases squarely addressing the issue in the context of § 844(e) or any statute criminalizing the "making" of threats, it is logical that a defendant who repeats a third party's threat may be subjected to criminal liability. In determining the existence of a threat under similar statutes, we have adopted an objective test focusing on how a "reasonable person would foresee . . . the statement [being] interpreted by persons hearing or reading it." Welch, 745 F.2d at 619-20. If a defendant's repetition of a third party's threat is reasonably interpreted as a simple disclosure of the existence of the threat for informational purposes, no illegality has occurred. If, on the other hand, a defendant's repetition of a third party's threat is reasonably interpreted as communicating the

defendant's *own* intent, purpose, or goal to "kill, injure, or intimidate any individual or unlawfully to damage or destroy any building, vehicle, or other real or personal property by means of fire or an explosive," the defendant has violated 18 U.S.C. § 844(e). In the latter scenario, the defendant has effectively adopted the third party's threat as his own. There is no requirement that the defendant convey an intent to carry out the threatened conduct himself. See United States v. Dinwiddie, 76 F.3d 913, 925 n.9 (8th Cir. 1996) (citing United States v. Bellrichard, 994 F.2d 1318, 1319-24 (8th Cir. 1993)).

Viefhaus' actions here clearly implicate § 844(e). In the recorded message, Viefhaus stated he was repeating the threat of a "high ranking revolutionary commander" as "an added ultimatum to those . . . who are still unwilling to pick up a sword." [2] The message further stated "innocent people must be considered expendable if necessary," specifically referencing the bombing of the Murrah Federal Building. Viefhaus' statement regarding the imminent bombing of fifteen cities reasonably may be construed as a "true threat." Therefore, Viefhaus' prosecution and conviction did not violate his First Amendment rights.

Citing Dennis v. United States, 341 U.S. 494 (1951), Viefhaus also argues the district court should have resolved his First Amendment defense as a matter of

---

[2] If no "high ranking revolutionary commander" actually made such a threat, Viefhaus would be guilty under § 844(e) of "maliciously convey[ing] false information knowing the same to be false."

law rather than submit the matter to the jury. In Dennis, defendants were charged with conspiracy to organize an American communist party for the purpose of overthrowing the United States government, in violation of the Smith Act, 18 U.S.C. §§ 10-11 (1946). Defendants maintained the statute was unconstitutional as it deprived individuals of protections afforded by the First Amendment. The trial court denied defendants' motion to dismiss, which was based on their assertion that the statute was unconstitutional. Later, the court instructed the jurors that if they found defendants were in violation of the statute, the court would, as a matter of law, conclude that defendants' First Amendment rights were not violated. The Supreme Court invoked the historical "clear and present danger"[3] test and held the trial court had properly characterized defendant's constitutional challenge to the statute as an issue of law and thus did not err in ruling on the question. Id. at 513.

Dennis is readily distinguishable. Here, Viefhaus is not contesting the constitutionality of § 844(e). Rather, he asserts only that his particular speech was political in nature. We consistently have held that whether a defendant's statement is a true threat or mere political speech is a question for the jury. See

---

[3] The "clear and present danger" test, first articulated in Schenck v. United States, 249 U.S. 47 (1919), has been replaced by the "incitement" test developed in Brandenburg v. Ohio, 395 U.S. 444 (1969). See Denver Area Educ. Telecomm. Consortium, Inc. v. FCC, 518 U.S. 727, 775 (1996) (Souter, J., concurring).

Leaverton, 835 F.2d at 257; Crews, 781 F.2d at 832. If there is no question that a defendant's speech is protected by the First Amendment, the court may dismiss the charge as a matter of law. See United States v. Malik, 16 F.3d 45, 51 (2d Cir. 1994). Such a scenario, however, is not present here.

**Rule 404(b) evidence**

Viefhaus contends the district court erred in admitting the racially inflammatory items seized in the search of his home.

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Fed. R. Evid. 404(b). A district court's decision to admit evidence of prior bad acts under 404(b) is reviewed for an abuse of discretion. United States v. Hardwell, 80 F.3d 1471, 1488 (10th Cir. 1996).

There are four requirements for admissibility under Rule 404(b): (1) evidence of other crimes, wrongs, or acts must be introduced for a proper purpose; (2) the evidence must be relevant; (3) the court must make a Rule 403 determination whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) the court, upon request, must instruct the jury that the evidence of similar acts is to be considered only for

-10-

the limited purpose for which it was admitted.  Huddleston v. United States, 485 U.S. 681, 691-92 (1988);  United States v. Fitzherbert, 13 F.3d 340, 343 (10th Cir. 1993).

The district court permitted the government to introduce the objectionable materials for the purpose of showing Viefhaus' motive, intent, and state of mind. [4] Viefhaus argues that, because he admitted intentionally recording the controverted message, the jury had no reason to hear evidence regarding his motivation or intent.  We disagree.  Viefhaus' primary defense was that his comments did not constitute a "true threat."  As noted, the test for evaluating whether a message amounts to a "true threat" focuses on how a "reasonable person would foresee . . . the statement [being] interpreted by persons hearing or reading it."  Welch, 745 F.2d at 619-20.  Context is critical.  See Watts, 394 U.S. at 708;  Leaverton, 835 F.2d at 256-57.

> When the defendant offers lack of intent as a defense, even though the government does not have to prove subjective intent as an element of the offense, the circumstances surrounding the making of the calls becomes relevant.  The evidence offered clearly was probative of defendant's state of mind and tends to counter his allegation of benign purpose.

United States v. Cox, 957 F.2d 264, 267 (6th Cir. 1992) (per curiam) (sustaining conviction under 18 U.S.C. § 875(c));  accord  United States v. Morrison, 153 F.3d

---

[4] Both parties agree the court gave a limiting instruction to that effect.

-11-

34, 57 (2d Cir. 1998) (same); United States v. Fulmer, 108 F.3d 1486, 1501-02 (1st Cir. 1997) (sustaining conviction under 18 U.S.C. § 115(a)(1)(B)). Moreover, the need to demonstrate the context in which Viefhaus uttered his remarks rendered much of the evidence of Viefhaus' racial hostility intrinsic to the crime charged in the indictment. See United States v. O'Brien, 131 F.3d 1428, 1432 (10th Cir. 1997) ("It is well settled that Rule 404(b) does not apply to other act evidence that is intrinsic to the crime charged, and that other act evidence is intrinsic when the evidence of the other act and the evidence of the crime charged are inextricably intertwined.") (quotations and alternations omitted).

In attempting to demonstrate that Viefhaus' message regarding the imminent bombing of fifteen cities was a "true threat," the government sought to show such violence represented the culmination of considerable planning for a racial holy war. The escalating rhetoric of the hotline messages, along with the racist and inflammatory literature and materials found in the house, helped establish that Viefhaus believed a "racial conflagration" was on the horizon. The only way a jury could properly assess the sincerity of Viefhaus' beliefs, as well as the likely effect Viefhaus' message would have on an objective listener, was to examine the circumstances in which the comments were made. Although admission of this evidence was harmful to Viefhaus, its probative value

outweighed any prejudicial effect.    See Fed. R. Evid. 403 ("evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice").  The district court did not abuse its discretion in its evidentiary rulings.  Further, even if some of the evidence was not admissible under 404(b), its introduction was harmless in light of the overwhelming evidence of Viefhaus' guilt.  See United States v. Oberle  , 136 F.3d 1414, 1419 (10th Cir.) (district court's improper admission of evidence in contravention of Rule 404(b) constitutes harmless error where record contains "substantial evidence of defendant's guilt"),  cert. denied  , 119 S. Ct. 197 (1998).

AFFIRMED.