BALDOCK, Circuit Judge,
concurring in the judgment only.
The interstate transmission of “any communication containing ... any threat to injure the person of another” is a federal crime. 18 U.S.C. § 875(c). The question presented in this case is whether § 875(c) requires the Government to prove a defendant’s subjective intent to threaten. The court concludes the First Amendment requires such proof. But to my mind we should resolve this case without resorting to the First Amendment by simply construing the statute’s text. Indeed, we are duty bound not to reach constitutional questions unnecessarily even if the parties ask us to do so. See Ulster Cnty. Court v. Allen, 442 U.S. 140, 154, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979) (recognizing federal courts have a “strong duty to avoid constitutional issues that need not be resolved”). Accordingly, I respectfully decline to join the court’s opinion.
I.
In Clark v. Martinez, 543 U.S. 371, 125 S.Ct. 716, 160 L.Ed.2d 734 (2005), the Supreme Court explained that “when deciding which of two plausible statutory constructions to adopt, a court must consider the necessary consequences of its choice. If one of them would raise a multitude of constitutional problems, the other should prevail.” Id. at 380-81, 125 S.Ct. 716. This is the canon of constitutional avoidance. The canon “is a tool for choosing between competing plausible interpretations of a statutory text, resting on the reasonable presumption that Congress did not intend the alternative which raises serious constitutional doubts.” Id. at 381, 125 S.Ct. 716. Importantly, however, “[t]he canon of constitutional avoidance comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction.” Id. at 385, 125 S.Ct. 716 (emphasis added). Therein lies the fundamental problem with this court’s opinion. The court undertakes no “ordinary textual analysis” of § 875(c), but simply states “[t]he statutory language contains no mens rea requirement” and proceeds to engage the Constitution from the outset. Court’s Op. at 973. After telling us it “will read into § 875(c) any scienter necessary to satisfy the demands of the First Amendment,” the court identifies the only question before us - as whether “the First Amendment ... requires the government to prove in any true-threat prosecution that the defendant intended the recipient to feel threatened.” Id. at 973, 975. The court undoubtedly applies the canon of constitutional avoidance prematurely, and perhaps unnecessarily.
*983 The Supreme Court’s recent grant of the petition for a writ of certiorari in United States v. Elonis, 730 F.3d 321 (3d Cir. 2013), cert. granted, — U.S. -, 134 S.Ct. 2819, — L.Ed.2d - (2014), is telling. The only question raised in the petition (the same question this court insists on answering) is “[wjhether, consistent with the First Amendment ..., conviction of threatening another person [in violation of 18 U.S.C. § 875(c)] requires proof of the defendant’s subjective intent to threaten ...; or whether it is enough to show that a ‘reasonable person’ would regard the statement as threatening----” Petition for a Writ of Cert., Elonis, 2014 WL 645438 (No. 13-983) (2014). Importantly, however, in its order granting the petition, the Court directed the parties to brief and argue an additional question: “Whether, as a matter of statutory interpretation, conviction of threatening another person under 18 U.S.C. § 875(c) requires proof of the defendant’s subjective intent to threaten.” Elonis, 134 S.Ct. at 2819. The Supreme Court’s order granting the petition in Elonis reinforces what Clark teaches us, namely that in interpreting § 875(c) we must first ask what its text requires rather than what the Constitution demands. One need not be an oracle to understand what the Supreme Court first wants to know. And what the Supreme Court wants we should endeavor to provide.[1]
II.
This court says in footnote 2 of its opinion that two circuit precedents, namely our decisions in United States v. Dysart, 705 F.2d 1247 (10th Cir.1983), and United States v. Viefhaus, 168 F.3d 392, 395-96 (10th Cir.1999), preclude us from deciding by way of ordinary textual analysis what sort of intent § 875(c) requires. Not so. We have never considered whether § 875(c) requires proof of a defendant’s subjective intent to threaten. We have never even once held the term “threat” as used elsewhere in the criminal code excludes a- defendant’s subjective intent.
Dysart involved a prosecution under 18 U.S.C. § 871, which proscribes threats against the President. To be sure, in Dy-sart the defendant argued “the trial court erred in failing to charge that for conviction under § 871, it must be shown that [the defendant] intended the letter to be taken as a threat.” Dysart, 705 F.2d at 1256. But a careful reading of Dysart reveals we never held otherwise. Instead, we explained that § 871 “requires that the Government must prove a ‘true “threat” ’, and the instructions given by the trial court met this requirement.” Id. at 1256 (internal citation omitted). Those instructions, in addition to stating that the recipient must reasonably perceive the communication as threatening, elsewhere defined the term “threat” as an “avowed present determination or intent to injure presently or in the future,” and required the prose *984 cution to establish “a serious threat as distinguished from words as mere political argument, talk or jest.” Id. The instructions also required consideration of “the context in which [the words] were spoken,” not the context in which they were heard. Id. (emphasis added). In short, the instructions which we approved in Dysart included a subjective intent component: that the speaker intend his threat be taken seriously, as opposed to in jest.[2]
In Viefhaus, by contrast, the defendant never argued 18 U.S.C. § 844(e), which proscribes bomb threats, requires proof of a defendant’s subjective intent to threaten. Rather, the defendant argued “his comments amounted only to ‘vulgar political speech’” protected by the First Amendment. Viefhaus, 168 F.3d at 395. We rejected that argument by distinguishing a “true threat” from political speech based on its effect on the listener, much like the Supreme Court did in Watts v. United States, 394 U.S. 705, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969). Importantly, Viefhaus never addressed whether § 844(e) lacks a subjective intent component. In fact, our words suggest otherwise:
A “true threat” means “a serious threat as distinguished from words as mere political argument, idle talk or jest.” United States v. Leaverton, 835 F.2d 254, 257 (10th Cir.1987). We have previously defined “threat” by referencing the language of Black’s Law Dictionary. See id. at 256-57. We again rely on that definition, but elaborate on the meaning of “intent” as it is used in that definition. Thus, we define “threat” as a declaration of intention, purpose, design, goal, or determination to inflict punishment, loss, or pain on another, or to injure another or his property by the commission of some unlawful act. See Black’s Law Dictionary 1480 (6th ed.1990); Webster’s Third New Int’l Dictionary (unabridged) 1176 (1993). It is not necessary to show that defendant intended to carry out the threat, nor is it necessary to prove he had the apparent ability to carry out the threat. The question is whether those who hear or read the threat reasonably consider that an actual threat has been made. It is the making of the threat and not the intention to carry out the threat that violates the law.
Viefhaus, 168 F.3d at 395-96 (emphasis in original).
Similar to the definition we approved in Dysart, our definition of a “threat” in Vief-haus implicitly contains a subjective intent component. The italicized statement appearing in the original cannot be read in isolation from the remainder of the text and, in particular, the sentences immediately preceding and succeeding it. Taken in context, that statement merely expresses our (correct) view that a defendant need not intend to carry out the threat or even have the apparent ability to do so. In no sense does the italicized statement suggest the Government need not prove a defendant’s subjective intent to threaten as part of a § 844(e) prosecution.
But regardless of how one chooses to read our precedents—lest any doubt remain—I am aware of no Supreme Court or Tenth Circuit decision that says a court’s *985 interpretation of a term in one statute binds its interpretation of the same term in a different statute. In Hackwell v. United States, 491 F.3d 1229, 1235 (10th Cir.2007), we explained that “[w]hile there is no per se rule of statutory interpretation that identical words used in different statutes are intended to have the same meaning, we will nevertheless look at a statute’s relationship to other statutes to determine Congress’s intent.” (internal quotations omitted). See also Envtl. Def. v. Duke Energy Corp., 549 U.S. 561, 574, 127 S.Ct. 1423, 167 L.Ed.2d 295 (2007). What this means for present purposes is that any construction we may have given the word “threat” in a statute other than § 875(c) is merely one facet of a comprehensive textual analysis of § 875(c), not an excuse to forego such analysis altogether. Plainly then, Tenth Circuit precedent does not preclude us from undertaking a textual analysis of § 875(c) in the first instance.
III.
As noted in the court’s opinion, a number of our sister circuits recently have addressed the meaning of § 875(c). See Court’s Op. at 979. Oddly enough, however, Judge Sutton is the only circuit judge to date to address the question the Supreme Court now wants answered. In his separate dubitante opinion in Jeffries, Judge Sutton asks why the circuit courts have routinely construed § 875(c) “through the prism of free-speech principles” and, in particular, the Supreme Court’s splintered decision in Virginia v. Black, 538 U.S. 343, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003), without first simply construing its text.[3] United States v. Jeffries, 692 F.3d 473, 485 (6th Cir.2012) (Sutton, J., dubitante). “The statute should require first what the words say....” Id. Only if our construction of § 875(c)’s text raises constitutional concerns need we ask what constitutional avoidance principles require.
Judge Sutton’s dubitante opinion first addresses the wording of § 875(c), then its history, and finally background norms for construing criminal statutes. That is, he undertakes an ordinary textual analysis of § 875(c). Applying these “conventional indicators of meaning,” id., Judge Sutton comes to but one conclusion: In a case such as this, where everyone agrees the intent element of § 875(c) contains an objective component, see Watts, 394 U.S. at 708, 89 S.Ct. 1399, courts need not rely on the First Amendment to interpret § 875(c) because the statute as written already requires the Government to prove a defendant’s subjective intent to threaten. Courts relying on Black to construe § 875(c) have placed the cart before the horse.
As to the meaning of the word “threat” itself, Judge Sutton points out—
Every relevant definition of the noun “threat” or the verb “threaten, ” whether in existence when Congress passed the law (1932) or today, includes an intent component. “To declare (usually conditionally) one’s intention of inflicting injury upon” a person, says one dictionary. 11 Oxford English Dictionary 352 (1st ed.1933). “An expression of an intention to inflict loss or harm on another by illegal means, esp. when effecting coercion or duress of the person threatened,” says another. Webster’s New Int’l Dictionary 2633 (2d ed.1955). “A *986 communicated intent to inflict harm or loss on another,” says still another. Black’s Law Dictionary 1489 (7th ed.1999). And so on: “An expression of intention to inflict pain, injury, evil, or punishment.” American Heritage Dictionary of the English Language 1801 (4th ed.2000). And on: “An expression of intention to inflict something harmful.” Webster’s New College Dictionary 1149 (1995). And on: “A declaration of an intention or determination to inflict punishment, injury, etc., in retaliation for, or conditionally upon, some action or course.” Random House Unabridged Dictionary 1975 (2d ed.1987).

If words matter, I am hardpressed to understand why these definitions do not resolve today’s case. These definitions, all of them, show that subjective intent is part and parcel of the meaning of a communicated “threat” to injure another.

Jeffries, 692 F.3d at 483-84 (Sutton, J., dubitante) (internal brackets omitted) (emphasis added). In other words, the dictionary definition of the word “threat” connotes subjective intent. One may cause another to “feel threatened” through an act of mere jest or even negligence (an objective inquiry), but one cannot “threaten” another without intending to do so (a subjective inquiry).
Of course, Judge Sutton’s definitional analysis is not immune from challenge. As Justice Frankfurter once commented: “All our work ... is a matter of semantics.”[4] Notably, for instance, when defining a “true threat” in Black, the Supreme Court added language to the aforementioned dictionary definitions, perhaps to emphasize that subjective intent was part and parcel of that phrase.[5] Compare Black’s Law Dictionary 1489 (7th ed.1999) (defining threat only as “[a] communicated intent to inflict harm”), with Black, 538 U.S. at 359, 123 S.Ct. 1536 (defining threat as “where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence.... ” (emphasis added)). This arguably suggests dictionary definitions of a “threat” alone do not encompass the necessary subjective intent, or at least that the Supreme Court may not believe so. But, as Judge Sutton forcefully points out, any ambiguity in the dictionary definitions of “threat” is surely overcome by 1) the history of § 875, which from the beginning possessed a subjective intent component, originally, the “intent to extort,” and 2) the background norms for construing criminal statutes, which “presume that intent [ie. something more than negligence] is the required mens rea in *987 criminal laws.” Jeffries, 692 F.3d at 484 (Sutton, J., dubitante).
Judge Sutton’s analysis of the word “threat” as it appears in § 875(c) leads me to believe we too have placed the cart before the horse. At the very least, this court should tell us why Judge Sutton’s view does not carry the day when the Supreme Court seems to think it might.

. My initial response to the grant of certiorari in Elonis, given its nearly identical stature to this case, was to ponder whether we should decide this case now. Certainly, where a defendant is in custody, to delay a decision in favor of such defendant might be unfair notwithstanding a relevant grant of certiorari. But here, Defendant Heineman received a sentence of three years probation. Just last month, the district court reduced Defendant’s sentence to two years probation. United States v. Heineman, No. 11-CR-432-DN, Corrected Order at 1 (D.Utah Aug. 8, 2014). Defendant has approximately six months left to serve. Today's judgment is no guarantee that Defendant will be free from state supervision anytime soon because the Government may choose to apply for certiorari or retry him. I see little need of rendering an opinion here when the Supreme Court had granted certio-rari in another case that in all likelihood will resolve the matter before us. But because this court forces my hand, I too shall play my cards—for better or worse.

. The court relies on Dysart’s rejection of the defendant's subjective intent argument without ever acknowledging why we rejected that argument. We rejected that argument because the instructions as written already required proof of the defendant’s subjective intent to threaten. Specifically, we rejected the contention "that the instructions did not avoid the risk of conviction for a crude jest or expression of political hostility,” because that contention "is clearly untenable in light of the explicit guidance on that point found in the instructions.” Dysart, 705 F.2d at 1256.

. Judge Sutton also authored the Sixth Circuit’s opinion in Jeffries. Because the Sixth Circuit previously had held § 875(c) does not require proof of subjective intent, the court was required to address Jeffries’ argument that the First Amendment, via Black, invalidated all communicative-threat laws failing to do so. Jeffries, 692 F.3d at 483 (Sutton, J., dubitante).

. “All our work, our whole life is a matter of semantics, because words are the tools with which we work, the materials out of which laws are made.... Everything depends on our understanding of them.” William T. Coleman, Counsel for the Situation: Shaping the Law to Realize America’s Promise 78 (2010) (quoting Justice Frankfurter).

. In Black, the Court explained that the reasons why the First Amendment does not shield "true threats” is to protect individuals " 'from the fear of violence’ and ‘from the disruption that fear engenders,’ in addition to protecting people 'from the possibility that the threatened violence will occur.’ ” Black, 538 U.S. at 360, 123 S.Ct. 1536 (quoting R.A.V. v. City of St. Paul, 505 U.S. 377, 388, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992)). The first two reasons lend themselves well to an objective intent standard that asks how a reasonable person would perceive the "threat.” The third reason, however, suggests the First Amendment may require the Government to prove subjective intent as part of any § 875(c) prosecution. If the culprit lacks a subjective intent to threaten, the possibility the threatened violence will occur seems at best rather remote.