**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 25-11781

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

RIGOBERTO ALBIZAR MARTINEZ,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:24-cr-00217-MSS-TGW-1

_____

Before JORDAN, ROSENBAUM, and LUCK, Circuit Judges.

PER CURIAM:

Rigoberto Albizar-Martinez appeals his conviction for using a telephone to willfully make a threat to bomb the offices of United States Representative Kathy Castro from Florida, in violation of 18

U.S.C. § 844(e). Albizar-Martinez contends that insufficient evidence supports the conviction because he engaged solely in political speech and hyperbole protected by the First Amendment, and that the district court abused its discretion by failing to properly instruct the jury on the definition of a "true threat" and the subjective intent necessary to convict under the Supreme Court's recent decision in *Counterman v. Colorado*, 600 U.S. 66 (2023). After careful review, we affirm Albizar-Martinez's conviction.

## I.

On May 1, 2024, just after 6:30 p.m., Albizar-Martinez called the Tampa district office of U.S. Representative Kathy Castro and left a voicemail in Spanish, which was transcribed and translated.[1]

---

[1] For context, we provide below the voicemail in full, as transcribed and translated for trial:

> Hi, terrorist, . . . Kasti Castro, as you're called. My name is Rigoberto Albiz[a]r Martinez. My telephone number is [omitted].
>
> I won't give you my address because I'm in the street thanks to you sons of bitches, democrats and also look at everything you have formed now with these famous pro-Palestinians, who are the same fucking blacks, sons of bitches, supported by you all when they vandalized all the stores, when the[y] stole everything from us, when they sacked our cars, when they vandalized everything. It's the same movement you all created.
>
> Look what I'm going to say, dyke, bitch. Make sure that nothing happens to me, because I'm going to put a bomb in your office. Are you . . . it's a threat. It's a threat, and take it

In the recorded message, which he directed to "terrorist . . . Kasti Castro," Albizar-Martinez said, "I'm going to put a bomb in your office." Then, in case he wasn't clear, he followed up with "it's a threat. It's a threat." Albizar-Martinez preceded and followed his threat with caustic remarks about Castro, "democrats," "pro-Palestinians," "blacks," and "Black Lives Matter." He broadly accused them of making him homeless and supporting vandalism, theft, and freeloading.

Representative Castro's office staff thought the voicemail contained a "pretty serious threat," so they reported it to U.S. Capitol Police. The office then continued operations under a heightened security protocol, such as screening entrants before entry. The heightened protocols were in place until Albizar-Martinez's arrest five days later.

Special Agent Guillermo Torres with the Capitol Police took "immediate action" upon being assigned the case and arranged a

---

however you want, mother-fucking bitch. You fucking mother. You fucking mother.

I'm fed up with all you, the democrats who have created all of this. Make sure that no pro-Palestinian of these encounters me on the street. Make sure, mother-fucking bitch, all of this was created by you all, the democrats, all the Black Lives Matter, and all these blacks, and all of you who are sons of bitches who don't want to work and want to live off the government.

Mother fucking bitch, you fucking mother. I fuck your mother, bitch.

face-to-face interview with Albizar-Martinez within 24 hours. During the interview, according to Torres, Albizar-Martinez became angry when asked directly about the bomb threat, and he also made several vaguely threatening comments, including that if "something happens to him, he will have to do something to her," speaking of Representative Castro. Albizar-Martinez also confirmed that he made the call and left the voicemail.

The next day, a Saturday, Albizar-Martinez called Agent Torres, angrily complaining that Uber had suspended him from driving—a situation he blamed on Representative Castro. When Albizar-Martinez abruptly hung up, Torres requested 24-hour protection for Castro's residence.

A few years before this incident, in 2021, Albizar-Martinez had been interviewed by police and warned about making threatening statements in a voicemail to another member of Congress. In the voicemail, Albizar-Martinez said that the representative would be receiving a package in her mailbox and there was little time left. The officers made clear to Albizar-Martinez that his statements had been received as a threat, and that he should not make threats or threatening calls to government officials in the future.

## II.

A federal grand jury indicted Albizar-Martinez on one count of making a bomb threat by telephone, in violation of 18 U.S.C. § 844(e). He pled not guilty and proceeded to trial.

After the government presented its case-in-chief, Albizar-Martinez moved for judgment of acquittal. He contended that the

government had failed to prove that he meant what he said to be taken as a threat, citing the Supreme Court's decisions in *Elonis v. United States*, 575 U.S. 723 (2015), and *Counterman v. Colorado*, 600 U.S. 66 (2023). And he noted that his proposed jury instructions, which we consider in more detail below, captured the requirement that the government prove he intended his statements as a threat.

The district court denied the motion for judgment of acquittal "because the defendant said what he said and the jury is free to consider it to be intentional." The court reasoned that the jury could choose to believe Albizar-Martinez when he said, "[T]his is a threat, this is a threat," after he said he was "going to put a bomb in [Representative Castro's] office." Thus, in the court's view, sufficient evidence allowed a reasonable jury to convict Albizar-Martinez under any of the proposed jury instructions. The defense rested without offering evidence, and the district court denied Albizar-Martinez's renewed motion for judgment of acquittal.

The parties disputed the proper instructions to the jury for the § 844(e) offense. The government proposed the pattern instruction in this Circuit. For his part, Albizar-Martinez offered a few modifications of that language. Both sets of proposed instructions listed three elements for the offense, which were stated as set forth below. For Albizar-Martinez's modifications, represented in [*italics*] below, replace the accompanying underlined text in the pattern instruction with the italicized text.

(1) the Defendant made a <u>threat</u> [*true threat*] to unlawfully damage or destroy a building by means of an explosive;

(2) the Defendant used a telephone to communicate the threat; and

(3) the Defendant acted <u>knowingly and willfully</u> [*willfully when he communicated a true threat*].

The parties also defined the respective key terms. In relevant part, the pattern instruction defined a "threat" as "an expression of intent to unlawfully damage or destroy a building by means of an explosive, and made with the intent that others understand it as a serious threat." Albizar-Martinez's instructions defined a "true threat" as "a serious threat—not political hyperbole, idle talk, careless remarks, or something said crudely, offensively, or jokingly—that, when taken in context, conveys a real possibility that the speaker means to commit an unlawful act of violence." The pattern instruction also defined the terms "knowingly" and "willfully." The parties agreed that the government "doesn't have to prove that the [d]efendant intended to carry out the threat."

At the charge conference, Albizar-Martinez argued for removing the term "knowingly" in the third element to be more consistent with the statute, which uses the term "willfully." *See* 18 U.S.C. § 844(e). He also contended that the addition of the "true threat" language was necessary to update the pattern instruction to comply with *Elonis* and *Counterman*.

The district court concluded that the pattern language did not need to be updated in light of *Elonis* and *Counterman*. The court noted that the statute in those cases was silent as to mens rea, but the statute here set a higher standard. And in the court's view, the pattern instruction "makes clear that it has to be a true threat, so to speak, because it says that a threat means an expression of intent to unlawfully damage or destroy a building by means of an explosive and made with the intent that others understand it as a serious threat." Thus, the court rejected the argument that "a threat [was] not adequately described in the instruction." The court acknowledged that the pattern instruction did not include an "alternative suggestion of what a threat isn't, such as hyperbole, political speech, argument, a joke." But the court said that Albizar-Martinez was "free to argue [] to the jury" that "this is just a joke or political hyperbole." Accordingly, the district court gave the jury the pattern instruction, without Albizar-Martinez's modifications.

In closing arguments, the prosecutor argued that this was a "textbook bomb threat" case. The prosecutor cited the "clear and straightforward and violently specific" language Albizar-Martinez used, including his repeated comment, "it's a threat." The prosecutor argued that, while Albizar-Martinez's "demeaning and mean words" were protected under the First Amendment, the "moment that he steps out of that First Amendment is when he issues a threat." In response, defense counsel framed the case as attempting to "bypass the First Amendment and protected political speech." Counsel argued extensively that Albizar-Martinez's comments, in

context, were protected political hyperbole under the First Amendment and not a "true threat or a serious threat."

About 30 minutes after the jury began its deliberations, it sent out a note asking for the "definition of the words 'intent,'" and a "copy of the First Amendment." After conferring with the parties, the district court declined to provide a copy of the First Amendment and directed the parties to rely solely on the evidence and instructions presented in court. The jury found Albizar-Martinez guilty of violating § 844(e).

The district court sentenced Albizar-Martinez to 12 months and a day of imprisonment. This appeal followed.

## III.

We review a district court's rejection of a proposed jury instruction for an abuse of discretion. *United States v. Moore*, 115 F.4th 1370, 1374 (11th Cir. 2024). The refusal to give a requested instruction is not reversible unless the instruction "(1) was correct, (2) was not substantially covered by the charge actually given, and (3) dealt with some point in the trial so important that failure to give [it] seriously impaired the defendant's ability to conduct his defense." *Id.* (quotation marks omitted); *see United States v. Richardson*, 532 F.3d 1289, 1289 (11th Cir. 2008). We review the legal correctness of an instruction *de novo*. *Moore*, 115 F.4th at 1374.

So long as "the charge as a whole accurately reflects the law," however, district courts "have broad discretion in formulating jury instructions." *United States v. Prather*, 205 F.3d 1265, 1270 (11th Cir. 2000). We will not reverse unless we are left with a

"substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations." *McCormick v. Aderholt*, 293 F.3d 1254, 1260 (11th Cir. 2002) (quotation marks omitted).

Section 844(e) prohibits making bomb threats by telephone, among other things. *See* 18 U.S.C. § 844(e). A person violates § 844(e) if, using a telephone, he "willfully makes any threat . . . concerning an attempt or alleged attempt . . . to kill, injure, or intimidate any individual or unlawfully to damage or destroy any building" by means of an explosive. 18 U.S.C. § 844(e).

The Supreme Court has explained that "a statute such as this one, which makes criminal a form of pure speech, must be interpreted with the commands of the First Amendment clearly in mind." *Watts v. United States*, 394 U.S. 705, 707 (1969) (involving 18 U.S.C. § 871, which prohibits making "any threat" to kill or harm the President). "What is a threat must be distinguished from what is constitutionally protected speech." *Id.*

Like the statute at issue in *Watts*, § 844(e) "requires the [g]overnment to prove a true 'threat.'"[2] *Id.* at 708; *see* 18 U.S.C. §§ 844(e), 871. "True threats" are "outside the bounds of the First Amendment's protection." *Counterman*, 600 U.S. at 72. "The 'true' in that term distinguishes what is at issue from jests, 'hyperbole,' or other statements that when taken in context do not convey a

---

[2] We agree with the other circuits to address the issue that 18 U.S.C. § 844(e) reaches only "true threats." *See, e.g.*, *United States v. Spruill*, 118 F.3d 221, 228 (4th Cir. 1997); *United States v. Viefhaus*, 168 F.3d 392, 395–96 (10th Cir. 1999).

real possibility that violence will follow (say, 'I am going to kill you for showing up late')." *Id.* True threats, in other words, are "serious expressions conveying that a speaker means to commit an act of unlawful violence." *Id.* (cleaned up). "The speaker need not actually intend to carry out the threat." *Virginia v. Black*, 538 U.S. 343, 359–60 (2003). The existence of a true threat is an objective determination, "depend[ing] not on the mental state of the author, but on what the statement conveys to the person on the other end." *Counterman*, 600 U. S. at 74 (quotation marks omitted).

In addition to proving an objective "threat," the government must also establish the defendant's subjective intent, even if the statute lacks an express scienter requirement. *See Elonis*, 575 U.S. at 740 ("Federal criminal liability generally does not turn solely on the results of an act without considering the defendant's mental state."). "The mental state requirement must . . . apply to the fact that the communication contains a threat." *Id.* at 737.

In *Counterman*, the Supreme Court established that the First Amendment requires "a subjective mental-state requirement shielding some true threats from liability," to prevent chilling effects on protected speech. 600 U.S. at 75. To comply with the First Amendment, according to *Counterman*, the government must establish at least "recklessness," meaning "a speaker is aware that others could regard his statements as threatening violence and delivers them anyway." *Id.* at 79–80 (quotation marks omitted). But the Court declined to go further "up the subjective mens rea ladder," explaining that proof of purpose or knowledge was not necessary.

*Id.* at 80–81.  Nonetheless, the First Amendment is satisfied if the defendant made a communication "for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat." *Elonis*, 575 U.S. at 740.

Unlike as in *Elonis* and *Counterman*, however, the statute here, § 844(e), specifies the mental state that applies to the fact that the communication contains a threat.  *See id.* at 737; *Counterman*, 600 U.S. at 70–71.  In particular, the statute requires that the defendant make the threat "willfully."  18 U.S.C. § 844(e).

Consistent with this Circuit's pattern instruction, the district court's instructions to the jury for § 844(e) included as an element that the defendant acted both "knowingly and willfully."  Eleventh Circuit Pattern Jury Instructions (Criminal Cases) O27.  The court stated that "knowingly" meant that the "act was done voluntarily and intentionally and not because of a mistake or by accident," while "willfully" meant that "the act was committed voluntarily and purposefully, with the intent to do something the law forbids."  The court's charge also defined the term "threat" as "an expression of intent to unlawfully damage or destroy a building by means of an explosive, and made with the intent that others understand it as a serious threat."

Here, Albizar-Martinez has not shown that the district court reversibly erred in instructing the jury on the elements of his bomb threat offense under § 844(e).  Even assuming without deciding that Albizar-Martinez's requested instruction was legally correct and complete, the instructions the court actually gave substantially

covered the requested instruction.  And Albizar-Martinez has not shown that the court's refusal "seriously impaired [his] ability to conduct his defense."  *Moore*, 115 F.4th at 1374.

The district court did not fail to instruct the jury on the "subjective intent required by *Elonis*" and *Counterman*, as Albizar-Martinez contends.  *Counterman* and *Elonis* together set a baseline mens rea standard of recklessness for threat offenses.  But they have no direct application when, as here, the statute specifies a higher level of mens rea than recklessness.  *See United States v. Curtin*, 78 F.4th 1299, 1305 n.3 (11th Cir. 2023) (stating that *Counterman* was "irrelevant" where "the record evidence sufficiently demonstrates that [the defendant] acted with a mens rea of at least knowledge, which surpasses recklessness"); *United States v. Fleury*, 20 F.4th 1353, 1371 (11th Cir. 2021) (stating that the problem in *Elonis*—"a statute that lacked *any* scienter element"—was not present in *Fleury*, since 18 U.S.C. § 2261A(2) "required proof that the defendant acted with the intent to harass or intimidate").  Because the "plain language" of § 844(e) "contains an express mental state requirement"—that the threat be made "willfully," a mental state that surpasses recklessness—*Counterman* and *Elonis* don't call for "read[ing] an additional mens rea requirement into the text."  *Fleury*, 20 F.4th at 1371–72.

The district court's instructions also properly instructed the jury on the subjective intent necessary to convict under § 844(e).  This case is not like *Elonis*, where the defendant's conviction was "premised solely on how his posts would be understood by a reasonable person."  *Elonis*, 575 U.S. at 737.  The instructions here

25-11781                Opinion of the Court                13

required the jury to find not only that Albizar-Martinez made a "threat"—"an expression of intent to unlawfully damage or destroy a building by means of an explosive"—but that he made it *with the intent that others understand it as a serious threat.*"  In other words, the court directed, Albizar-Martinez must have subjectively intended for others to receive his comments as a serious threat.  The jury was also required to find that Albizar-Martinez acted both "knowingly and willfully," and the court defined "willfully" as "voluntarily and purposefully, with the intent to do something the law forbids."[3]  Viewed as a whole, the court's instructions properly instructed the jury on subjective intent by requiring a finding that Albizar-Martinez intentionally or purposefully made a "serious threat" of unlawful violence.

Because the district court's instructions substantially covered the subjective-intent element, Albizar-Martinez cannot show that his defense was substantially impaired.  While the court did not adopt Albizar-Martinez's proposed use of the term "true

---

[3] Either mens rea standard, knowingly or willfully, satisfies First Amendment requirements.  *See Counterman v. Colorado*, 600 U.S. 66, 79–80 (2023); *Elonis v. United States*, 575 U.S. 723, 740 (2015); *United States v. Curtin*, 78 F.4th 1299, 1305 n.3 (11th Cir. 2023).  Although "knowingly" is arguably superfluous, since only "willfully" is used in § 844(e), we fail to see how an additional mens rea requirement harmed Albizar-Martinez's defense.  Nothing in the charge relieved the government of the burden to prove that he acted "willfully."  And "[a] jury is presumed to follow its instructions."  *Weeks v. Angelone*, 528 U.S. 225, 234 (2000).

threat" or his definition of that term[4], "we afford district courts wide discretion to decide on the style and wording of an instruction so long as it accurately reflects the law." *Fleury*, 20 F.4th at 1373 (cleaned up). The court's definition of "threat" was accurate, if not as detailed as the requested defense instruction. *See Counterman*, 600 U.S. at 72. And in closing, defense counsel argued extensively that Albizar-Martinez's speech was political hyperbole and the First Amended protected it, and that he lacked the intent to make a true or serious threat. *See Booth v. Pasco County*, 757 F.3d 1198, 1209 (11th Cir. 2014) (finding no prejudicial harm where the district court refused to give a jury instruction but permitted the plaintiff to make the same point during closing). The mere fact that the jury asked about "intent" and the First Amendment does not establish that the instructions were inadequate, particularly given the court's responses redirecting the jury to the evidence and instructions presented in court. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000) ("[A] jury is presumed to understand a judge's answer to its question.")

For these reasons, Albizar-Martinez has not shown that the district court abused its discretion or reversibly erred by giving the pattern instruction for § 844(e) instead of his requested instruction. *Moore*, 115 F.4th at 1374. The court's instructions may be subject

---

[4] Albizar-Martinez's instructions defined a "true threat" as "a serious threat—not political hyperbole, idle talk, careless remarks, or something said crudely, offensively, or jokingly—that, when taken in context, conveys a real possibility that the speaker means to commit an unlawful act of violence."

to reasonable criticism and could have included a more detailed definition of covered threats, but we are not left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations. *See McCormick*, 293 F.3d at 1260.

## IV.

We review de novo the denial of a motion for judgment of acquittal based on sufficiency-of-evidence grounds. *United States v. Capers*, 708 F.3d 1286, 1296 (11th Cir. 2013). In doing so, "we view the evidence in the light most favorable to the prosecution and draw all reasonable inferences and credibility choices in its favor." *Fleury*, 20 F.4th at 1367 (quotation marks omitted). "[W]e will uphold the denial of judgment of acquittal—and affirm the guilty verdict—if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quotation marks omitted). The evidence need not be inconsistent with every reasonable hypothesis except guilt, and the jury is free to choose among the reasonable conclusions to be drawn from the trial evidence. *United States v. Poole*, 878 F.2d 1389, 1391 (11th Cir. 1989).

Albizar-Martinez argues that the evidence at trial was insufficient for a jury to find beyond a reasonable doubt that (1) his voicemail "conveyed a 'true threat,'" and (2) he had "wanted his words to be received as a threat" or had otherwise "intended to convey a true threat." We disagree.

First, a reasonable jury could conclude that Albizar-Martinez's voicemail, in context, conveyed a true "threat" to its recipients. *See Counterman*, 600 U.S. at 74. Albizar-Martinez called

Representative Castro's office and left a message for her specifically. In the message, he clearly conveyed that he intended to commit an act of unlawful violence. *See id.* He said he was "going to put a bomb in your office," and then, to remove any doubt, said "it's a threat. It's a threat." And he otherwise sounded angry, used abusive language, and blamed Castro for making him homeless.

The jury also heard evidence that the recipients of the message, Castro's office staff, treated the voicemail as containing a "pretty serious threat" by reporting the threat to Capitol Police, and by operating under heightened security protocols for several days. Making all credibility choices and drawing all reasonable inferences in favor of the verdict, the jury had more than sufficient evidence to conclude that Albizar-Martinez's bomb threat was not hyperbole or made in jest, but rather was what it appeared to be: a clear and serious threat of violence. *See Fleury*, 20 F.4th at 1367.

Albizar-Martinez emphasizes that he made the "bomb threat" in the course of conveying his displeasure about political issues. But "[t]he fact that a specific threat accompanies pure political speech does not shield a defendant from culpability." *United States v. Viefhaus*, 168 F.3d 392, 396 (10th Cir. 1999); *see United States v. Callahan*, 702 F.2d 964, 966 (11th Cir. 1983) ("That the letter contains certain political and religious statements does not serve to remove it from the prohibition of the statute.").

And even assuming Albizar-Martinez did not intend to commit violent acts and did not have the means to do so, "[t]he speaker need not actually intend to carry out the threat." *Black*, 538 U.S. at

359–60.  Plus, while the threat was vaguely conditioned on "something happen[ing] to [him]," the threat itself—"I'm going to put a bomb in your office"—was not.  *See Callahan*, 702 F.2d at 966 ("Although the carrying out of the threat might have been conditional upon Secret Service aid and agreement, the threat itself was not."); *Viefhaus*, 168 F.3d at 396 ("[A] statement may constitute a threat even though it is subject to a possible contingency in the maker's control.") (quotation marks omitted).

Second, a reasonable jury could find that Albizar-Martinez willfully made a serious threat—that is, that he left the voicemail with the intent or purpose to issue a serious threat.  *See Elonis*, 575 U.S. at 740.  The jury was free to construe Albizar-Martinez's comment, "it's a threat, it's a threat, and take it however you want, motherfucking bitch," following the bomb threat, as reflecting his intent for the recipient to take his threat seriously.  He also sounded angry and aggrieved, suggesting a motive for making the threat. And the jury heard evidence that he had previously been warned about making threatening statements to another U.S. representative, which suggested he knew that making an unambiguous bomb threat, backed up by "it's a threat, It's a threat," would be received as a serious threat.  That Albizar-Martinez did not "actually intend to carry out the threat" is not a defense.  *See Black*, 538 U.S. at 359–60.  For these reasons, sufficient evidence supports the conclusion that Albizar-Martinez intended to make a serious threat.[5]

---

[5] For the first time in his reply brief, Albizar-Martinez contends that we should conduct an "independent" review of the record under the "constitutional facts

## V.

In sum, we affirm Albizar-Martinez's conviction for violating § 844(e).

**AFFIRMED.**

---

doctrine," and not "simply defer to the jury's findings" on whether he communicated a true threat. But "[a]s we repeatedly have admonished, [a]rguments raised for the first time in a reply brief are not properly before a reviewing court." *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005) (quotation marks omitted). Nor would such a review call for a different result here, in any case.